Mrs. Stella M. Smith, plaintiff herein, appealed from judgment rejecting her suit to recover the proceeds of an industrial life insurance policy issued by the defendant company on the life of her husband, James Lafayette Smith, wherein she was named as beneficiary. The insured died on February 14, 1943.
The policy provides that the insured may from time to time change the beneficiary therein by filing with the insurer a written request therefor on blanks furnished by it, accompanied by the policy for endorsement of the change thereon by one of its executive officers.
The policy in question issued December 17, 1928. The weekly premium due thereon was 66¢. At or about the same time the policy issued defendant also issued one of the same character to plaintiff, on which the weekly premium was 25¢. When the policies issued defendant made out and delivered to the insureds, or one of them, a premium receipt book in which the name of each insured was written, the ages of the insureds, the number of each policy, amount of the weekly premiums and the date of each policy. Premium payments and dates made were entered in this book.
At the time the policies issued, plaintiff and the deceased were living together several miles north of the City of Shreveport where they conducted a small business of some sort. She was his second wife and twenty-eight years his junior. In September, 1941, he suffered a heart attack and was carried to a sanitarium in the City of Shreveport, and from there carried to the home of his married son, Vernon S. Smith, where he stayed until the summer of 1942.
Very soon after the insured took up abode with his son, the small business formerly operated by him and plaintiff was sold. At that time and to the filing of this suit, the policy in question was in the possession of plaintiff. About that time she was asked by Mrs. Vernon S. Smith if she had the policy and stated that she did not. A change of the beneficiary being desired, the insured applied for issuance of a duplicate policy and one issued. It was delivered to the insured's son.
On November 6, 1941, the insured made written application to the defendant for change of beneficiary to Vernon S. Smith. This application was approved and endorsement of the change in beneficiary made upon the duplicate policy. Contemporaneously with this change, defendant's agent divided the insurance account by issuance of two premium receipt books, one for the policy issued to James Lafayette Smith, which was delivered to Vernon S. Smith, and the other for the policy issued to the plaintiff, which was delivered to her. Thereafter, Vernon S. Smith, to the time he was inducted into the military service of the Government, paid weekly premiums due on the policy and thereafter they were paid by the last named beneficiary, James T. Smith.
Excepting some two months, the insured lived with his said son until August, 1942, and thereafter to his death, lived with his nephew, Joseph T. Smith, in Corsicana, Tex. The change in abode was necessitated because of the induction of Vernon S. Smith into the armed forces of the Government.
On October 5, 1942, on written application of the insured, Joseph T. Smith was substituted as beneficiary under the policy and endorsement to that effect made upon *Page 354 
the duplicate policy. The proceeds of the policy were paid to this beneficiary after the death of the insured.
Not long after the insured's death, plaintiff submitted to and filed with the insurer's agent in Shreveport, proofs of death on forms provided by it. Her demand for payment to her of the amount of the policy was refused, and this suit followed.
Plaintiff predicates her alleged right to recover upon the designation of her as beneficiary in the original policy. She alleges that she paid to defendant's agents and representatives and they received from her all premiums due on the policy to the time of the death of the insured.
Defendant, after detailing all the facts stated above, admits that through error on the part of its Shreveport agents, premium payments by plaintiff on the policy to the amount of $46.65 were accepted by them, but it is charged that in making said payments plaintiff acted in bad faith because she knew or had good reason to know that the beneficiary in the policy had been changed
Defendant pleads that the changes in beneficiary of the policy were effective, in that the insured had the absolute right under the express terms of the policy to do so and after such changes were made, plaintiff had no interest in or expectancy under the policy; that the payment of the proceeds of the policy to James T. Smith, last named beneficiary, was proper and that such payment legally absolved defendant from further liability as insurer.
In answer, and again at beginning of trial, defendant tendered to plaintiff $52.85, being the amount of premiums paid by her and cost of court to the time of tender, in full satisfaction of its liability to her. The tender was refused.
After joinder of issue by answer, plaintiff filed a plea of estoppel wherein it is set up that defendant is estopped from denying liability to her under the policy since it allowed the original policy to remain in her possession to the time of suit, and received from her premiums due thereunder to the time of the death of the insured.
The lower court gave judgment to plaintiff for the amount tendered and cast her for all costs.
We deem it unnecessary to this opinion to detail the explanations offered by defendant's agents in excuse for accepting premiums from plaintiff at times when the new beneficiaries were also paying them. It is not difficult to understand, for the reasons hereinafter stated, why for a time premiums were accepted from plaintiff, but it is quite difficult to conceive why the error was not detected long before some seventy payments were made by her. However, the duplicate payments have no material influence upon a correct determination of the main issues in the case.
As said hereinabove, when Vernon S. Smith was named beneficiary the original premium receipt book with information hereinabove related, was superseded by two books of that character. The first four payments plaintiff made on premium account, after the issuance of the two books, were for 25¢ each. These payments were endorsed in her book. But, on April 20, 1942, when she tendered 91¢ and presented this book to defendant's agent, the name of James L. Smith as an assured appeared therein (under her's), also the number of the policy, his age, amount of weekly premium and erroneous date of issuance of the policy; that is, its date was given as February 17, 1942, whereas it issued December 17, 1928. Tender and acceptance of 91¢ weekly continued until James L. Smith's death.
It is satisfactorily shown that none of defendant's agents entered the name of James L. Smith in the premium receipt book. The conclusion may fairly be drawn that plaintiff made such entry or caused same to be done. She denies responsibility for the entry.
Plaintiff does not controvert the position of the defendant that under the express terms of the policy the insured had the absolute right, without her consent, to change the beneficiary thereunder; but she vigorously contends that the efforts to displace her as beneficiary were abortive because they did not strictly conform to the provisions of the policy in that the changes of beneficiary were not endorsed upon the original policy. Defendant's reply to this contention may be summarized as follows:
1. That the stipulation in the policy to the effect that change or changes of beneficiary thereunder shall be endorsed upon the policy was inserted therein purely for the benefit and protection of the insurer and may be waived by it; and that it did, in effect, waive the requirement;
2. That since, under the terms of the policy, the interest of the beneficiary therein is nothing more than an expectancy, — in no sense a vested interest or right — she is *Page 355 
without right or standing to question the acts of the insurer in effecting changes in beneficiary through the method herein related.
Evidently the relation between plaintiff and her husband, when the duplicate policy issued, was strained. He had become the charge of his son by first marriage. It was but a natural paternal impulse on the part of the father to do or try to do all he could in a financial way to compensate the son for the trouble and expense to which he would be put in rendering him help and assistance after his earning power and ability had ceased; and that same feeling motivated him in the desire to substitute his nephew as beneficiary when his son entered the service of the Government. It is noted on the application for the first change in beneficiary that the policy was "lost in moving". Presumably, the move following the sale of the business, above mentioned, was referred to. It was obvious that conditions warranted application for and issuance of a duplicate policy to meet future needs.
[1] Plaintiff's contentions are not well founded. The case of Causey v. State Life Insurance Company, 17 La. App. 545, 135 So. 747, 748, presents facts very much akin to those in the case at bar. All the questions raised and issues tendered in that case appear in the present case. In that case the beneficiary in the policy involved was changed more than once by the assured with the insurer's consent. And, as here, the policy provided that change of beneficiary should be endorsed upon the policy but that was not done. However, the change, although not endorsed upon the policy, was recognized by the court and held to have been effective. The court's holdings are clearly and tersely reflected from the syllabi of the case, to-wit:
"Requirement for indorsement of change of beneficiary on policy was for insurer's benefit and could be waived by insurer.
"Insured's application on printed form to have beneficiary changed and insurer's indorsement of acceptance thereon effected change of beneficiary, though indorsement was not made on policy. * * *
"Beneficiary's consent held not necessary to effect change in policy, since beneficiary had no vested interest."
To sustain its rulings, the court cited an array of authorities, including the following: Alba v. Provident Savings Life Assurance Society of New York, 118 La. 1021, 43 So. 663; Toussant v. National Life Accident Insurance Co. of Nashville, Tennessee, 147 La. 977, 86 So. 415; Pollock v. Pollock, 164 La. 1077, 115 So. 275.
As bearing upon the issues, we also cite: Berry v. Franklin State Bank Trust Co., 186 La. 623, 173 So. 126; Ahrens v. First National Life, Health Accident Insurance Co. of New Orleans, 6 La. App. 661; Kimbal v. National Life Accident Insurance Co. et al., 8 La. App. 228; Wickes v. Metropolitan Life Insurance Company, La. App., 170 So. 48.
[2, 3] It is made clear from the cited authorities and from many others not cited, that if the insured, in a policy of the character before us, substantially does all that lies within his power, under the provisions of the policy, to effect a change in beneficiary, and if the desired change is not contrary to law or public policy, and does not affect vested rights, such efforts will be held to have accomplished their purpose; and especially is this true where the insurer has approved the change. In the present case the only reason the changes in beneficiary were not endorsed upon the original policy was due to plaintiff's possession of it. Surely, under the facts and circumstances, she should not be allowed to capitalize upon her own lack of fairness.
In support of her position, plaintiff's energetic counsel cite several cases and some text book authorities from other jurisdictions; also the following cases decided by the Supreme Court of this state, to-wit: New York Life Insurance Company v. Murtagh et al., 137 La. 760, 69 So. 165; Giuffria v. Metropolitan Life Insurance Company, 188 La. 837, 178 So. 368, 369.
Since our own courts have, by a long line of cases, established a jurisprudence determinative of the issues tendered in this case, we need not consider cases and authorities of other jurisdictions to aid us in solving said issues.
The facts of the two Louisiana cases cited differentiate them from the present case. In the Giuffria case, the policy involved provided that the insured may designate a new beneficiary, to-wit: "* * * 'by filing written notice of this change at the Home Office of the Company, accompanied by this policy for endorsement of the change thereon by the Company. No such change shall be effective unless and until it is so endorsed on the policy, but upon such endorsement the change will be deemed to *Page 356 
have been made as of date the insured signed the written notice of change, whether the insured be living at the time of such endorsement or not, * * *."
The insured in that case executed proper written form of application for change of beneficiary which was sent to the insurer's home office in New York City, and received by it on May 6th. The policy was delivered to the insurer's New Orleans agency on that day but as the insured died the following day it was not sent to the home office at all. The court held that the attempt to change the beneficiary failed. In that case the contest was primarily between the original beneficiary and the persons named in the application to change the beneficiary. To support the contention that the change in beneficiary was effective, the case of Sbisa et al. v. Lazar et al., 5 Cir.,78 F.2d 77, a Louisiana case, was cited, as well as two other cases arising in other states. The Louisiana case grew out of a litigation between Dr. E.E.C. Pollock and his wife, Julia L. Pollock. See Pollock v. Pollock, supra, and State ex rel. Pollock v. Equitable Life Assurance of United States,167 La. 342, 119 So. 71.
The following pronouncement by the court in the Giuffria case clearly differentiates it from the present one, and supports the contention that the insurer may, prior to the death of the insured, waive production of an original policy of insurance in order to effectuate a change in beneficiary, to-wit: "We do not mean to hold, and we do not hold, that the provision in an insurance policy fixing the manner in which the beneficiary may be changed cannot be waived by the insurance company before the death of the insured. Circumstances might arise where it would be advisable for the company to do so. But we do mean to hold, and we do hold, that no such waiver can take place after the insured's death, when the rights of the original beneficiary or beneficiaries have become vested."
The facts of the Murtagh case are that the application for change of beneficiary was never received by the home office of the insurer, as required by the policy. It was delivered to the branch office in New Orleans and there is some question as to whether it was mailed to the home office. The insurer died soon after the application was delivered to the branch office.
[4] We are certain the lower court did not err in overruling the plea of estoppel. We here quote and adopt as our own opinion on this plea, a portion of the court's written reasons for overruling it, to-wit:
"The plea is not applicable here, we think. In the first place plaintiff has not suffered any loss or injury which is essential to the working of an estoppel. She has not been deprived of any right under the contract for, as we have seen, she had no vested right thereunder and the mere expectancy which she had terminated when a new beneficiary was substituted for her. The premiums she paid on the policy after the change of beneficiary (premiums were also being paid at the same time by the insured on the new beneficiaries) are tendered to her with interest and costs, thus restoring to her the only thing with which she has parted. To decree an estoppel here would permit plaintiff to acquire a positive gain which is not the office of estoppel. 10 R.C.L., Estoppel, p. 697, Sec. 25. Moreover, we are not convinced that plaintiff did not know of the change of beneficiary from her to insured's son."
[5] Following this quotation, the court narrated quite a number of facts disclosed by the record, most of which we have given herein, to sustain the conclusion that plaintiff must have known of the change in beneficiary, and it finally says: "At any rate plaintiff bears the burden of proving all the facts necessary to constitute estoppel, including her lack of knowledge or lack of negligence in obtaining the facts when the same were readily ascertainable by inquiry either of the insurer or insured. 21 C.J., Estoppel, p. 1250, § 267. This she has not done to our satisfaction.
For the reasons herein given, the judgment appealed from is affirmed with costs. *Page 357