424 So.2d 377 (1982)
STANDARD LIFE & ACCIDENT INSURANCE COMPANY, Plaintiff-in-Concursus and Appellee,
v.
Doris M. PYLANT, Defendant-in-Concursus and Appellant, and
Irene P. Jordan, Defendant-in-Concursus and Appellee.
No. 15079-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1982.
Writ Denied January 28, 1983.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, for plaintiff-in concursus and appellee.
Travis M. Holley, Bastrop, for defendant-in concursus and appellant.
*378 Rankin, Yeldell, Herring & Katz by Charles E. Herring, Bastrop, for defendant-in concursus and appellee.
Before HALL, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
In this concursus proceeding, Doris M. Pylant appeals a judgment rejecting her claim as the beneficiary of two life insurance policies insuring the life of her deceased husband from whom she was legally separated. We affirm.
Because Doris M. Pylant and Irene P. Jordan, the mother of the deceased, had both filed claims as alleged beneficiaries under two insurance policies issued by Standard Life and Accident Insurance Company on the life of Wilburn E. Pylant, Standard Life initiated this proceeding and deposited into the registry of the court the net proceeds of the two policies in dispute. The material facts involved in this dispute were stipulated by the parties and are summarized as follows:
On June 1, 1971 and February 1, 1975, the policies in question were issued upon the application of Wilburn E. Pylant. At the insured's request, the beneficiary named and written into each policy was his wife, Doris M. Pylant. Wilburn and Doris M. Pylant were judicially separated by judgment dated October 1, 1981. Thereafter, on October 21, 1981, Wilburn Pylant wrote a letter to Standard Life in his own hand informing the company of the legal separation, identifying the policies in question, and requesting that the beneficiary on each policy be changed to his mother, Irene P. Jordan. This letter was received by Standard Life on October 26, 1981.
On November 1, 1981, Wilburn E. Pylant suffered a severe cerebrovascular accident, was hospitalized and subsequently died on November 19, 1981. While Mr. Pylant was hospitalized and before his death, Standard Life forwarded by mail on November 6, 1981, a company prepared and printed change of beneficiary form for his execution.
Shortly after November 6, 1981, and prior to the death of Mr. Pylant, Doris Pylant, without the permission of Mr. Pylant, entered the former matrimonial domicile in Collinston, Louisiana, looked through certain personal effects of Mr. Pylant and discovered a copy of the letter sent by her husband to Standard Life requesting the beneficiary changes. Still without his permission or the permission of anyone else, she then opened the mailbox at her former residence, discovered the letter from Standard Life which contained the "Change of Beneficiary Forms" and opened it removing the forms and keeping them in her possession until after the death of Mr. Pylant. At no time did Mrs. Pylant advise her husband or anyone on his behalf that she was in possession of these forms. In short, Mrs. Pylant, wrongfully intercepted the change of beneficiary forms and held them without the knowledge of Mr. Pylant or Mrs. Jordan until after the death of Mr. Pylant.
Consequently, the forms were never executed by Mr. Pylant or returned to Standard Life, and Standard Life did not endorse the change of beneficiary on the policies or otherwise act on Mr. Pylant's request.
Subsequent to the death of Mr. Pylant, both Mrs. Pylant and Mrs. Jordan made claims for the benefits due under the terms of the policies. After investigating both claims, Standard Life arrived at the conclusion that it could not determine with legal certainty which claimant was entitled to the proceeds thereby necessitating the institution of this concursus proceeding.
The policies in dispute contain the following pertinent provisions regarding beneficiaries:
Any beneficiary under this policy may be changed from time to time by proper written request filed with the Company at its Home Office ... Upon recording of the change of beneficiary by the Company, such change shall relate back and take effect as of the date the written request therefor was signed, but without prejudice to the Company on account of *379 any payment made by it before receipt of such request...
* * * * * *
Modification. No condition, provision or privilege of this policy can be waived or modified in any case except by an endorsement hereon signed by the President, Secretary or an Assistant Secretary of the Company.
In concise, well articulated written reasons for judgment, the trial court rejected the claim of Mrs. Pylant and recognized Mrs. Jordan as the beneficiary under the policies stating:
Mrs. Jordan's argument is both factually and legally persuasive. It is obvious that the insured had done all he could do before his stroke to effect the desired change; and he had the unrestricted right to change the beneficiary. While at that time plaintiff's letter of November 6 indicated its intention to require more, the act of Mrs. Pylant in surreptitiously obtaining and secreting that letter and its enclosed forms effectively prevented the insured (2) or anyone acting for him from complying with plaintiff's request. Moreover, since the plaintiff has indicated its lack of interest in insisting upon compliance with that request and takes the position that it is willing to pay either claimant, such action must be considered a waiver of its policy provisions. The court therefore finds that the insured had done all he could do to effect the change, that plaintiff is not opposed to honoring the request and that Mrs. Jordan is therefore the new beneficiary on each policy...[1]
It is from the judgment signed in accordance with these reasons that Mrs. Pylant appeals contending that when the policy provisions quoted above are construed together, it is clear that no change of beneficiary was effective because such change was never endorsed upon the respective policies over the signature of one of the specified Standard Life officers. Therefore, she contends that she remained the beneficiary at the time of Mr. Pylant's death with rights which vested at that point.
Prior to further discussion we note that the issue of Mr. Pylant's ability or capacity to contract after his cerebrovascular accident was not covered by the stipulations entered of record. Nor was there any evidence adduced in connection therewith. Because the law of this state presumes the capacity to contract and favors and promotes the freedom to contract, we apply that presumption of capacity in our resolution of this matter. See First National Bank of Shreveport v. Williams, 346 So.2d 257 (La.App.3d Cir.1977).
At first glance, the jurisprudence appears to support the position of Mrs. Pylant. In Giuffria v. Metropolitan Life Insurance Company, 188 La. 837, 178 So. 368 (1938), the court stated:
It will be observed that the policy expressly provides that no change of beneficiary shall be effective unless and until it is indorsed on the policy at the home office of the insurer. The parties having agreed to that contractual provision, the courts of this state are bound to recognize and enforce the agreement as the law of the contract. Until that condition is fulfilled, a change of beneficiary is not effected. New York Life Insurance Co. v. Murtagh, 137 La. 760, 69 So. 165.
The insured's notice of change of beneficiary was regular in form, and it was mailed to and received by the insurance company prior to the insured's death. But that of itself was not sufficient to effect the change of beneficiary. Under the terms of the policy something more was required to be done; namely, the insurer's indorsement of the change of beneficiary upon the policy itself. No such indorsement was made by the insurer.
Upon the death of Clesi, the insured, the rights of his wife, Mrs. Madlyn Clesi, *380 the original beneficiary, became fixed, and could not be affected by any subsequent acts of the insurance company. New York Life Insurance Company v. Murtagh, 137 La. 760, 69 So. 165.
* * * * * *
We do not mean to hold, and we do not hold, that the provision in an insurance policy fixing the manner in which the beneficiary may be changed cannot be waived by the insurance company before the death of the insured. Circumstances might arise where it would be advisable for the company to do so. But we do mean to hold, and we do hold, that no such waiver can take place after the insured's death, when the rights of the original beneficiary or beneficiaries have become vested.
In the majority of cases this rule of "strict construction" has been followed in Louisiana on the theory that the policy of insurance is a contract which constitutes the law between the parties; thus, if the policy provides that a change of beneficiary is not effective until the policy itself is endorsed, then strict construction requires nothing less than its accomplishment. See Wickham v. Prudential Ins. Co. of America, 366 So.2d 951 (La.App. 1st Cir.1978) and cases cited therein.
However, we conclude that the particular facts and circumstances present in the instant case justify a different result from the cases cited hereinabove, a result which is supported by the rationale set forth and/or indicated in another line of cases which we choose to apply and follow. See Sbisa v. Lazar, 78 F.2d 77 (5th Cir.1935); Smith v. American National Ins. Co., 25 So.2d 352 (La.App. 2d Cir.1946); and Ahrens v. First National Life, Health and Accident Ins. Co., 6 La.App. 661 (Orl.1927).
In Sbisa, Julia Pollock was the beneficiary on a policy insuring the life of her husband, Dr. Ernest Pollock, from whom she was divorced in 1924. In the divorce proceedings, Dr. Pollock was declared to be the owner of the insurance policy in question; however, Mrs. Pollock retained possession of the policy refusing to surrender it to enable Dr. Pollock to change the beneficiary thereon in accordance with the terms of the policy. At the time of Dr. Pollock's death, Mrs. Pollock was still the named beneficiary on the policy. The insurer interpleaded the rival claimants, Mrs. Pollock and the administrator of Dr. Pollock's estate. The appellate court found in favor of the administrator stating:
... Mrs. Pollock's name, it is true, still remains indorsed on the policy as beneficiary, but that is so only because Dr. Pollock, with the aid of the court, was never able to get possession of the policy so that he could send it to the insurance company and have the name of the beneficiary changed. The policy stands as though no beneficiary had been named, and is therefore payable to the administrator of the insured for the benefit of the heirs. Appellees can hardly say with straight faces that appellants ought to be defeated for the reason that Dr. Pollock failed to send in the policy to the home office of the company and have the name of a new beneficiary indorsed on it. The provision of the policy as to the method of effecting a change of beneficiary was one for the benefit and protection of the insurance company only; and the insurance company clearly waived it by filing the bill of interpleader and depositing the amount of the policy to be paid to those entitled to receive it as the court might direct. [Citations omitted.] [Emphasis added.]
In Smith, Stella Smith, wife of the insured, was the original beneficiary on the policy issued in 1928. In 1941, the insured moved into the home of his son, Vernon Smith. The policy was and remained in the possession of Stella Smith after the move. Stella Smith was asked by Mrs. Vernon Smith if she had possession of the policy, and she denied having it. Desiring to change the beneficiary, the insured applied for and received a duplicate policy, subsequently making a written application to the insurer to change the beneficiary on the policy to Vernon Smith. The application was approved and endorsement of the *381 change in beneficiary made on the duplicate policy. Thereafter, the insured went to live with his nephew, Joseph Smith, who on October 5, 1942, upon written application of the insured was substituted as beneficiary under the policy. Endorsement to that effect was made on the duplicate policy. The proceeds of the policy were paid to Joseph Smith after the death of the insured in 1943. Stella Smith filed suit against the insurer. In rejection of her claim, the court stated:
It is made clear from the cited authorities and from many others not cited, that if the insured, in a policy of the character before us, substantially does all that lies within his power, under the provisions of the policy, to effect a change in beneficiary, and if the desired change is not contrary to law or public policy, and does not affect vested rights, such efforts will be held to have accomplished their purpose; and especially is this true where the insurer has approved the change. In the present case the only reason the changes in beneficiary were not endorsed upon the original policy was due to plaintiff's possession of it. Surely, under the facts and circumstances, she should not be allowed to capitalize upon her own lack of fairness. [Emphasis added.]
In Ahrens, the insurance company issued a policy to Pritchard on December 11, 1922. On November 11, 1924, Pritchard made Mrs. Ahrens the beneficiary of the policy. On December 18, 1925, Pritchard again changed or tried to change the beneficiary from Mrs. Ahrens to Mr. Wiltz by filing with the company an application signed and acknowledged before a notary which was duly noted by the company. However, Mrs. Ahrens refused to surrender the policy to Pritchard or to the insurance company. After Pritchard died, suits were brought by Mrs. Ahrens and Wiltz, each claiming to be the beneficiary of the policy. The policy contained the following provision:
The beneficiary or beneficiaries named herein may at the request of the insured be changed at any time to any person or persons having an insurable interest in the life of the insured, provided this policy is returned to the company at its home office, and the endorsement of the change made upon the policy.
In holding for Wiltz the court stated:
The evidence shows that Mrs. Ahrens refused to surrender the policy when requested to do so by the company and by the assured. In other words, she now seeks to profit by her own acts. She wishes to claim proceeds of policy for failure to comply with a provision, when she herself caused that failure.

On this point Ruling Case Law, (Volume 14, Section 556), says:
If the member does all that is within his power to effect a change in beneficiaries and fails to surrender the certificate * * * only because such certificate is in the possession of the original beneficiary who refuses to surrender it, the beneficiary thus thwarting the wishes of the member will not be allowed to profit thereby, and his rights to the proceeds of the certificate are subordinate to those of the new beneficiaries selected by the member. [Emphasis added.]
It is conceded by both litigants in the instant case that the policies require no specific form for the change request and that if the company had elected to endorse the policies upon receipt of Mr. Pylant's letter, the change would have been effected. Mrs. Pylant solely contends that since no such endorsement occurred her rights became vested upon the death of Mr. Pylant because no change of beneficiary was completed.
However, it is well settled that our law does not allow one to profit from his own wrongdoing. See Lloyd v. Dickson, et al, 116 La. 90, 40 So. 542 (1906); Fuselier v. United States Fidelity and Guaranty Co., 301 So.2d 681 (La.App. 3d Cir.1974); Sbisa v. Lazar, supra; Smith v. American National Ins. Co., supra; Ahrens v. First National Life, Health and Accident Ins. Co., supra. For example, pursuant to this rule of law as a matter of public policy, a beneficiary named in a life insurance policy is not entitled *382 to the proceeds of the insurance if he or she feloniously kills the insured; and arson has been recognized for many years in this state as a defense to a claim on a fire insurance policy. See American National Life Ins. Co. v. Shaddinger, 205 La. 11, 16 So.2d 889 (1944); Fuselier v. United States Fidelity and Guaranty Co., supra.
We are of the firm opinion that the aforementioned rule is a just one and is equally applicable to the facts of the instant case. Because of her wrongful and illegal act in intercepting the change of beneficiary forms and secreting them from Mr. Pylant until after his death, Mrs. Pylant is prohibited from reaping any benefit resulting from her obstructive misconduct. Since Mrs. Pylant is legally precluded from profiting by her own wrongful conduct, we conclude that her rights never vested under the policies upon the death of Mr. Pylant.
Therefore, in the instant case, the insured did substantially all that was within his power to effect a change of beneficiary under the provisions of both policies. It is even conceded by both parties that had Standard Life noted the change properly on the policies pursuant to the written request of October 21, 1981, this litigation would not be before this court. Furthermore, the provisions of the policies as to the method of effecting a change of beneficiary were for the benefit and protection of Standard Life only. Therefore, the company could waive those provisions because Mrs. Pylant's wrongful conduct prevented the vesting of her right as the named beneficiary. Consequently, under these facts and circumstances, Standard Life could and did waive these provisions by filing the instant concursus proceeding and depositing the amounts due under the policies to be paid to those entitled to receive them as determined by the court. See Wickes v. Metropolitan Life Insurance Co., 170 So. 48 (La. App.Orl.1936).
We further conclude that the result which we have reached herein is not incompatible with the holding in Giuffria v. Metropolitan Life Insurance Co., supra. Had the Giuffria court been faced with the facts as they exist here, the result would have been the same. In Giuffria, the insured's wife who was the named beneficiary had possession of the policy but surrendered it within three or four days after the request of the insured. The court specifically commented on her return of the policy as follows:
We do not find anything unusual in the conduct of Mrs. Madlyn Clesi in failing to immediately comply with the request of her husband that she turn over the policy to him. There was no fraud perpetrated by her... [Emphasis added.]
Furthermore, earlier in its opinion, the court had distinguished Sbisa v. Lazar, supra, based on the wrongful conduct issue. However, the following language of the Giuffria court indicates implied approval of that decision:
... [T]he real issue in the case of Sbisa v. Lazar was whether Mrs. Pollock could defeat the rights of Dr. Pollock's heirs by willfully withholding the policy from Dr. Pollock so that he was never able to send it to the insurance company to have the name of the beneficiary changed. The court held she could not...
Accordingly, we hold that where the insured has done all acts within his power to effectuate a change of beneficiary, and it is due to the willful misconduct of the originally named beneficiary that this change is prevented, the original beneficiary will not be allowed to profit from that wrongdoing by receiving the proceeds from the policy. By so holding, we will not sanction such conduct and allow justice to be thwarted.
For the foregoing reasons, the judgment of the trial court is affirmed, and in accordance with the order signed by the trial court on March 24, 1982, all costs of this proceeding including costs of appeal are ordered deducted from the funds deposited into the registry of the court.
JUDGMENT AFFIRMED.
NOTES
[1] Footnote 2 in Reasons for Judgment states:

The stipulation does not mention Pylant's physical and mental condition between the date of his stroke and his death, except that he was hospitalized.