442 So.2d 659 (1983)
John McSWEENEY, et al.
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT OF LOUISIANA, et al.
No. 83 CA 0193.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*661 Orlando G. Bendana, New Orleans, for plaintiff and appellee.
Grady C. Weeks, Houma, for defendant and appellant.
Timothy G. Schafer, New Orleans, for defendant United Services Auto Ins.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
This is a "strict liability" case (La.Civ. Code art. 2317) involving the condition of Louisiana Highway 659 near Houma, on March 17, 1980. The Department of Transportation and Development (DOTD) concedes proof has been made of the defect and its custody of the "thing." At issue is whether or not the defective condition of the highway, including its adjacent shoulder, was causative of the injuries sustained by four minor children when the car in which they were traveling left the highway, went onto the shoulder, and subsequently hit a utility pole. Our standard of review requires us to determine if the trial court was clearly wrong in resolving affirmatively this factual issue. The secondary issue in the case is the adequacy of the amounts awarded for damages.

*662 FACTS
The undisputed facts giving rise to this litigation are as follows. On March 17, 1980, at approximately 3:30 P.M., Karen McSweeney, the sixteen year old daughter of John McSweeney, was driving in a northerly direction on Louisiana Highway 659 near Houma, Louisiana. Karen's sisters, Peggy and Maureen McSweeney, and her nephew, Scott O'Rourke, were passengers in the car. It was raining and Karen had on her lights and windshield wipers. At one point Highway 659 is a two-lane roadway accommodating only northbound traffic, and at a point north of Houma, it changes suddenly to accommodate both north and southbound traffic. At the time of the accident, the double yellow lines were off center, reducing the width of the northbound lane by approximately fourteen inches. Along the shoulder of the narrowed northbound lane in which Karen was driving were ruts or depressions, containing holes of approximately four and one-half inches and six inches in depth. This was immediately adjacent to the main roadway, creating an abrupt difference in elevation between the roadway and the shoulder, which constitutes the conceded defect. Whether or not Karen left the highway at the location of this defective condition (drop-off) is disputed.
After the car left the roadway and the shoulder, it traveled through a muddy, grassy area and finally hit the utility pole. Karen and all of the passengers were injured.

PROCEDURAL HISTORY
John McSweeney and Mary Ann O'Rourke (mother of Scott O'Rourke), individually, and on behalf of the minor children, brought suit against DOTD and United Services Auto Insurance (USAI).[1] The plaintiffs claimed DOTD was solely liable under La.Civ.Code art. 2317[2] for the defective and unreasonably dangerous condition of Highway 659. Alternatively, USAI, the insurer of the McSweeney vehicle, was joined as a party defendant on behalf of Karen McSweeney, for medical pay coverage primarily; and, as a party defendant on behalf of Peggy McSweeney, Maureen McSweeney, and Scott O'Rourke, for liability coverage; in the event Karen McSweeney was found to be a negligent driver.[3]
After a trial on the merits, the court held DOTD liable under article 2317. It concluded it was more likely than not the McSweeney vehicle left the roadway at the location of the six inch deep rut and the narrowing of the highway by the yellow lines. The court found the plaintiffs had satisfied the burden of proving the highway-shoulder defect caused the vehicle to go out of control, resulting in the injuries received by its occupants. Since the court found the defect to be the main cause of the accident and found no fault on the part of the driver, the plaintiffs' demand against USAI and DOTD's third party demand against John McSweeney were dismissed with prejudice.
The court rendered judgment in favor of plaintiffs and awarded John McSweeney $3,000 on behalf of Peggy McSweeney; $1,000 on behalf of Karen McSweeney; $30,000 on behalf of Maureen McSweeney; and $11,480.65 individually. Mary Ann O'Rourke received $35,000 on behalf of Scott O'Rourke, and $9,127.93 individually.
*663 DOTD appealed, alleging the trial court erred in: (1) finding the defect in the shoulder of Highway 659 to be the cause in fact of the accident, (2) finding the defect in Highway 659 to be the legal cause of the accident, (3) according more probative value to the testimony of interested parties who were not eyewitnesses than to the testimony of disinterested eyewitnesses, (4) allowing an expert in traffic engineering to testify out of his tendered field and (5) failing to find the driver, Karen McSweeney, at fault in causing the accident.
John McSweeney, individually, and on behalf of Maureen McSweeney and Peggy McSweeney; and Mary Ann O'Rourke, individually, and on behalf of Scott O'Rourke; answered the appeal alleging the trial court was incorrect in not finding USAI liable jointly with DOTD, and was further incorrect in that the amount of damages awarded was inadequate.[4]

LIABILITY
To establish liability under article 2317, a plaintiff has the burden of proving three facts. First, the property which caused the plaintiff's damage was in the custody of the defendant. Second, the property which caused the plaintiff's damage was defective. Third, the damages incurred by plaintiff were caused by the defective thing. Loescher v. Parr, 324 So.2d 441 (La.1975), rehearing denied (1976). DOTD, having conceded the first two requirements are proven in this case, leaves for our consideration the third requirement, i.e., causation. See, Pitre v. Aetna Life and Cas. Co., 434 So.2d 191 (La.App. 3d Cir.1983).
In considering appellant's first argument that the defect in Highway 659 was not the cause in fact of the accident, it must first be determined whether or not the vehicle left the roadway at the location of the deep ruts.
Karen McSweeney testified the vehicle inadvertently left the highway where there were two deep ruts in the shoulder. DOTD contends, due to the fault of the driver, the vehicle skidded on the paved portion of the highway and left the road at a point past the ruts. The appellees contend the ruts caused the driver to lose control of the car and thus DOTD is liable for failing to maintain the highway shoulder in a safe condition. The trial court, relying upon the testimony and photographs of witnesses who visited the scene of the accident concluded the McSweeney vehicle left the roadway at the location of the six inch deep rut, causing the driver to lose control of the vehicle. Appellant argues the trial court erred in relying on the testimony of these witnesses because they were business associates of John McSweeney. In support of their testimony that the vehicle left the roadway at the location of the rut, they maintained car tracks could be traced from the utility pole back to the six inch deep rut. Although the tracks did not show up in the photographs taken the day after the accident, the trial court found no reason to doubt the veracity of plaintiffs' witnesses.
In considering the probative value and credibility of plaintiffs' witnesses the court noted their testimony was likely to be more reliable than the recollections of DOTD's witnesses. DOTD's witnesses were traveling in a van behind the McSweeney vehicle. The driver, Ricky Bader, gave inconsistent statements as to whether the McSweeney vehicle was on the shoulder or on the main highway when it went out of control. Elton Landry, the passenger in the van, testified he could not tell whether the McSweeney vehicle was completely or only partially on the paved portion of the highway when it suddenly veered off onto the shoulder. The investigating officer, Anthony Galliano, Jr., testified his investigation was not comprehensive because of his concern over a nearby fatal accident. He did not make any measurements to determine the point of departure.
*664 Considering the above testimony and the great discretion vested in the trial court in determining the credibility of witnesses, we can not say the trial court erred in placing more probative value on the testimony of the plaintiffs' witnesses than that of the defendants' witnesses.
In resolving the fact question, the trial court also relied on the testimony of Dwayne T. Evans, an expert in traffic engineering. Mr. Evans testified there were chips on the roadway surface near the deep ruts which he believed resulted from vehicles going off the roadway at that point for a period of years. In Mr. Evans' opinion, the existence of these chips, coupled with the narrowed northbound lane, evidenced the probability reasonably careful drivers had been leaving the highway at that point.
DOTD contends the trial court erred in giving more weight to Mr. Evans' testimony than to the deposed testimony of Dr. Olin K. Dart, Jr., an expert in accident reconstruction. Dr. Dart testified the vehicle left the roadway after reaching the location of the ruts. He based his opinion primarily on his interpretation of photographs taken within a few days of the accident, a method not as reliable as personal observations. We can not say the trial court erred in affording more weight to Mr. Evans' opinion than it did to Dr. Dart's opinion. "[W]here there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review...." Canter v. Koehring Company, 283 So.2d 716 at 723 (La.1973), rehearing denied 1973.
Furthermore, we find DOTD's contention that Mr. Evans testified out of his tendered field (traffic engineering) to be without merit. The trial court is to be granted much discretion in determining a witness's qualifications and competence to testify as an expert. As a reviewing court, we will not disturb the trial court's ruling unless the error is clear and involves a misunderstanding of law. Hunnicutt v. Kent, 434 So.2d 91 (La.App. 5th Cir.1982).
The trial court was correct in concluding the vehicle left the highway at the location of the narrowed lane and deep rut. Furthermore, we find the defect in the highway shoulder to be the cause in fact of appellees' injuries. Causation is a question of fact as to which the trial court's determinations are entitled to great weight and cannot be disturbed absent manifest error. Smith v. State, Through Dept. of Transp., etc., 412 So.2d 685 (La.App. 2d Cir.1982), writ denied, 413 So.2d 907 (La.1982); Rivet v. State, through Dept. of Transp., 434 So.2d 436 (La.App. 3d Cir.1983).
We next consider whether or not the defective shoulder was the "legal or proximate cause" of the accident.[5] It is well established that DOTD is charged with the duty of maintaining highway shoulders in a safe condition. Durrett v. State, 416 So.2d 562 (La.App. 1st Cir.1982), rehearing denied 1982. We find DOTD's duty of maintaining the shoulder of state highways encompasses the risk that a driver who encounters a lane narrowed by off-center yellow lines will inadvertently leave the main roadway, drop off into a rut in the shoulder and lose control of the vehicle. In Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979), rehearing denied 1979, the Supreme Court held at page 1199:
"[T]he Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder."
The risk encountered by the appellees, the loss of control of a vehicle after dropping off in a rut in the shoulder, is exactly the type of danger to be expected from such road conditions and is exactly the reason *665 such conditions must be repaired. Durrett, supra; see also, LeBlanc v. State, 419 So.2d 853 (La.1982). Therefore, the defective shoulder was the "legal or proximate cause" of the accident. Plaintiffs have borne the burden of proving the defective thing in the custody of DOTD caused their damages.
DOTD attempts to escape strict liability by establishing the defenses of "fault of the victim" and "fault of a third person." The first defense would bar Karen McSweeney from recovery and the second defense would bar her guest passengers from recovery. Alternatively, DOTD argues solidary liability should be imposed against it and USAI (Karen McSweeney's insurer) as regards the guest passengers. This defensive thrust is based upon DOTD's contention the true cause of the accident was Karen McSweeney's failure to control her vehicle while on the travel portion of the roadway, or her failure to maintain control was at least a substantial cause of the accident. See, Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.1982), writ denied, 420 So.2d 982 (La.1982), for a theoretical analysis of fault concepts underlying DOTD's position.
We find no merit in DOTD's contention Karen McSweeney's conduct caused the accident or contributed substantially to the accident. Miss McSweeney was driving within the speed limit and had on her windshield wipers and lights. Because of the off-center yellow line and narrowed northbound lane, she inadvertently steered into the rut and lost control of the vehicle. In Rue, supra, a motorist who inadvertently drove off the highway and lost control of her vehicle upon striking a deep rut in the shoulder was held not to be at fault.
The holding in Rue, supra, was narrowed in Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), rehearing denied 1980. In Sinitiere, the court held if a motorist has knowledge of a shoulder defect his action in leaving the roadway is a breach of his duty to himself and to his passengers.
DOTD contends Karen had knowledge of the defective condition of the shoulder and therefore is barred from recovery. We again disagree. Karen testified Highway 659 was not her daily route home from school. She was somewhat familiar with the road but was unaware of the drop off until her tire fell into the six inch rut.[6] No warning signs or signals were in the vicinity of the defective shoulder. In Cullivan v. State Farm Mut. Auto. Ins. Co., 428 So.2d 1231 (La.App. 3d Cir.1983), writs denied 433 So.2d 180, 181 (La.1983), a motorist, who had driven a road three times monthly and ridden on the road at least twenty times prior to the accident, was held not to have had actual or constructive knowledge of the defective shoulder.
We can not say the trial court was clearly wrong in finding Karen McSweeney free of fault in causing the accident. Since DOTD has not proven a defense to article 2317, strict liability applies affording recovery for plaintiffs' damages. Public bodies, such as DOTD, may be held liable under article 2317 for damages caused by defective things in their custody. Jones v. City of Baton Rouge, etc., 388 So.2d 737 (La. 1980); Scott v. State, Dept. of Transp., etc., 392 So.2d 482 (La.App. 1st Cir.1980), writ refused, 396 So.2d 921 (La.1981).
Considering the above evidence, we find no error as to the trial court's conclusions on liability.

QUANTUM
The initial inquiry in reviewing an award of damages is directed at determining whether or not the trial court's award for the particular injuries is a clear abuse of the trier of facts "much discretion." Reck v. Stevens, 373 So.2d 498 (La. 1979). We are here concerned with the injuries to Maureen McSweeney and Scott O'Rourke. The appeal was not answered *666 on behalf of Karen McSweeney and, although is was answered on behalf of Peggy McSweeney, the objection to award adequacy was not briefed for her. See Rule 2-12.4, Uniform RulesCourts of Appeal. Because we find the trial court's reasons for judgment to be articulate and complete, we adopt that portion which deals with the quantum issue, as a part of our opinion herein.
The trial court stated as follows:
"Although the lasting effect of the injuries received by these children was somewhat disputed, the medical testimony was basically unchallenged. The opinions of the several doctors who testified at trial and by depositions, along with this Court's observations of the children, can be summarized as follows:
* * * * * *
"MAUREEN `BEANEE' McSWEENEY:She arrived at Terrebonne General Hospital unconscious and convulsing. Because of the deep and jagged laceration of the forehead, with some scalp exposed, a serious head injury was suspected. She was transferred immediately to Ochsner Foundation Hospital in New Orleans, where she was hospitalized for 11 days. She has a `Y' shaped scar on the forehead about one inch from the hairline which is about one-half inch in diameter. There are three scars ranging in size from one-half inch to two inches from the top of the nose to the eyebrows.
"Maureen also suffered a broken femur which required the surgical insertion of a hip plate. Forty-three days after the accident she was ambulatory on crutches, 50% weight bearing. A month after that she was put on single crutch ambulation, 90% weight bearing. Since the accident she has complained about some pain in the knee, but this is not an extremely serious problem.
"Fourteen months after the accident, the hip plate was surgically removed. The surgeon estimated it would take from six months to one year for the screw holes in the bone to refill. This second surgery was followed by some limping and discomfort. She has an eight inch surgical incision scar running from the hip toward the knee.
"At the same time as the removal of the hip plate, a dermabrasion was performed to improve the appearance of the facial scars. Except for some minor improvement with another procedure under local anesthetic, the facial scarring present at trial is expected to remain.
"An award of $30,000.00 will compensate Maureen for her injuries.
"SCOTT O'ROURKE:Scott was the most severely injured of the four children. An intensive left front temporal fracture and a cervical concussion placed him in critical condition. He was transferred to Ochsner's, where he was kept in intensive care for two days.
"Scott's mother and grandmother both testified that the bruising and swelling of his entire face, along with the severe lacerations, made it impossible for him to open his eyes for some time. Although damage to his sight was eventually ruled out by the Ochsner staff, he was unable to open his eyes sufficiently to observe much around him or to watch television. `During his convalescence at Ochsner's, his pain was evidenced by marked irritability; he was often incoherent.
"Although there is no presently apparent damage to brain tissue, another head injury was noted by the treating physician at Ochsner's: pheumoencephalus, `air in the brain.' This condition can lead to infection, specifically meningitis. (See deposition of Dr. Richard Coulon, page 17.)
"Approximately one month following the accident, Scott was again hospitalized for eight days with spinal meningitis. The treating physician, Dr. Robert Haydel, testified that the meningitis was consistent with a spinal fluid leak stemming from the head injury received in the accident. Although Scott was critically ill at the onset of the meningitis, there has been no recurrence. The chances of increased susceptibility to epilepsy, although slight, have not been ruled out.

*667 "The numerous lacerations to Scott's face left observable scarring. At the time of trial Scott had a one inch `J'shaped scar on the side of his face near the nose. There was a one-half inch scar and a one-and-one half inch scar near the hairline. Six small scars near his right upper lip were brownish in color. A small scar in the right eyebrow created a cowlick effect, disrupting the natural line of the eyebrow.
"During June, 1982, Scott underwent a dermabrasion to improve the scars. This Court, with agreement of counsel, received further photographic evidence to view the results of this subsequent treatment.
"An award of $35,000.00 will compensate Scott for his injuries."
While we consider the awards for Maureen and Scott to be less than we would have granted, we find the trial court did not abuse its discretion in determining the quantum of damages. The awards are sanctioned by the guidelines of Reck v. Stevens, supra.
For the foregoing reasons, the judgment of the trial court in favor of the appellees is hereby affirmed in all respects. Costs in the amount of $4,812.95 are to be paid by appellant.
AFFIRMED.
NOTES
[1] Two suits were actually filed. Suit number 63,971 was filed by John McSweeney, individually, and on behalf of his minor children, Peggy and Maureen McSweeney and by Ann O'Rourke, individually, and on behalf of her minor son, Scott O'Rourke. Suit number 63,972 was filed by John McSweeney, individually, and on behalf of his minor daughter, Karen McSweeney, the driver of the car. Because both suits arose out of the same accident and involved substantially the same issues of law and fact, the cases were consolidated for trial.
[2] Art. 2317 reads in pertinent part as follows: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
[3] DOTD filed a "third party demand" against John McSweeney. Because of our ultimate decision we need not discuss this claim.
[4] For purposes of clarity, we will hereafter refer to DOTD as appellant and to the plaintiffs as appellees.
[5] There is confusion in the jurisprudence as to the proper analysis for causation under articles 2317 and 2315. We see no difference in the causation analysis under either article. The only difference in the analysis of the two theories is the claimant is relieved of proving the custodian's knowledge of the defect under article 2317. See, Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.1982), writ denied, 420 So.2d 982 (La.1982).
[6] Karen McSweeney testified it was her rear tire that hit the rut or hole. She could not explain this seemingly incongruous fact. If indeed it was that tire and not her front tire, the possibility this could happen was explained adequately by plaintiffs' expert witness.