GULOTTA, Judge.
The State of Louisiana, through the Department of Transportation and Development, (DOTD), appeals from a judgment for personal injuries to a car passenger caused by a defect in the shoulder of a state highway. We affirm.
The accident occurred on October 1, 1982, on Louisiana Highway 46 in St. Bernard Parish near the Cutreras Plantation monument. At the scene, La. 46 is a two-lane paved highway bordered by a ditch. There is an 8-10 inch “drop-off” or difference in level between the highway’s surface and its narrow shell shoulder. William A. Nunez was a guest passenger in a vehicle being driven by John E. Delcambre toward Poydras, Louisiana.
While traveling at a speed of 26-30 mph in a 40 mph zone, Delcambre edged toward the right side of the highway to avoid a possible collision with an oncoming van that appeared to crossing the center line into his lane. The right front wheel of Delcambre’s vehicle dropped off the travel lane onto the shoulder and he lost control, left the highway, skidded into the ditch, and collided with a tree.
Nunez filed suit for his injuries against the oncoming motorist and the DOTD, in its capacity as custodian of the highway. Asserting theories of negligence and LSA-C.C. Art. 2317 strict liability, plaintiff alleged the DOTD was liable for its failure to properly maintain the highway and warn motorists of the hazardous defect of the steep drop-off between the road surface and the shoulder. The DOTD answered with denials and third-partied Delcambre and the oncoming driver.
By supplemental and amending petition, Nunez named Barriere Construction Company, Inc., a road surfacing contractor, as an additional defendant, but later moved for a dismissal of the company prior to trial. Nunez also entered into a pretrial settlement with the host driver Delcambre, who in turn obtained a summary judgment dismissal of the DOTD’s third party demand. The oncoming driver was never served and made no appearance. After trial on Nunez’s main demand against the DOTD, the trial judge awarded plaintiff $174,453.39 in damages.
Appealing solely on the issue of liability, the DOTD contends the trial judge manifestly erred: 1) by finding that any difference in elevation between the highway surface and shoulder legally caused the accident; 2) by failing to find the two drivers negligent; 3) by failing to apportion the damages among the co-defendants under the comparative negligence principles of LSA-C.C. Art. 2324; and 4) by failing to find the oncoming motorist’s fault in forcing Delcambre off the road as the sole legal cause of the accident so as to exonerate the DOTD from LSA-C.C. Art. 2317 strict liability. We find no merit to these contentions.
Although we are not favored with the trial judge’s written or oral reasons for judgment, the evidence supports a finding that the legal cause of plaintiff’s injuries was the DOTD’s negligent failure to rectify the dangerous difference in elevation between the paved highway and the adjacent shoulder or to warn motorists of the hazard.
Ray H. Millett, a deputy sheriff who investigated the accident, testified that there was an eight to ten inch “drop-off” between the road surface and shoulder where Delcambre’s vehicle veered off the highway. Although Millett made no physical measurements of the scene, he described the drop-off as “considerable”, and testified that there was “no shoulder at all”. Based on his observations of the scene, Millett testified that the right side of *386 Delcambre’s vehicle dropped off the roadway and traveled for about 10 to 15 feet before all four wheel marks led into the tree. In his accident report, this officer indicated the presence of a “defective shoulder” at the scene.
John Delcambre, the host driver, testified that he veered to the right side of his lane to avoid a possible collision with the oncoming motorist who appeared to be invading his lane about 30 feet away. Delcambre testified that the right front wheel of his vehicle went off the highway in a “sudden drop” and the other wheels followed as he went out of control and slid into a tree seconds later. He testified that the difference between the roadway and the shell shoulder was about 10 inches and that if his wheel had not dropped off the highway he would have been able to maintain control. He emphasized that there was no way to re-enter the roadway and that he had no course of action to take before hitting the tree; in his words, “The shells threw me right into the tree.” Nunez generally corroborated Delcambre’s version of the incident.
Robert Jackson, a road maintenance superintendent for the DOTD at the time of the accident, testified that there was no “drive off shoulder” on La. 46 at the scene but only “little road bed on the side”. According to this witness, the road surface had been elevated when overlayed by a construction company about 6 months before the accident. He further stated, according to the manual of the DOTD, that a drop-off from the road surface to road shoulder any more than 2 inches is considered as not being within standards, and a difference in levels of more than 5 inches is “an emergency situation” that should be repaired right away. Jackson testified that he had inspected the roadway biweekly and had told his superiors of the dangerous conditions along Highway 46. According to Jackson, people had run off the road “all up and down there”.
The testimony concerning the condition of the highway was corroborated by photographs of the area introduced as exhibits. These pictures clearly depict the considerable drop-off between the road surface and the narrow roadbed, and the proximity of the ditch to the traveled portion of the highway.
DOTD’S LIABILITY
Although the DOTD is not a guarantor of the safety of travelers, it owes a duty to maintain the highways and their shoulders reasonably safe for non-negligent motorists. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); McDaniel v. State, Dept. of Transp. & etc., 398 So.2d 88 (La.1981). The DOTD is liable in negligence when it is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time. Sinitiere v. Lavergne, supra. Its duty to maintain the shoulders of State highways encompasses the risk that a driver might inadvertently leave the main roadway, drop off into a rut in the shoulder, lose control of his vehicle, and suffer injury. LeBlanc v. State, 419 So.2d 853 (La.1982); Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). In such cases, the defective road shoulder may be considered as the “legal or proximate cause” of the accident. McSweeney v. Dept. of Transp. & Development, 442 So.2d 659 (La. 1st Cir.1983).
Applying this jurisprudence to the facts of the instant case, we conclude that the evidence amply supports a finding that the DOTD was negligent. The drop-off of eight to ten inches between the roadway and narrow shoulder of La. 46 at the scene of this accident was a serious hazard, and the testimony of the former highway superintendent establishes that the DOTD, though aware of the danger, failed to rectify it or warn motorists.
Moreover, the DOTD’s breach of its duty to maintain the highway encompasses the risk of accidents to motorists who, while attempting to avoid a collision with an oncoming vehicle, inadvertently leave the highway and lose control because of a shoulder drop-off. See Thornhill v. Loui *387 siana Dept. of Transp., Etc., 424 So.2d 381 (La.App. 1st Cir.1982); McDaniel v. State, Dept. of Transp. & Etc., supra; Murphy v. Louisiana Dept. of Transp., Etc., 424 So.2d 344 (La.App. 1st Cir.1982). Furthermore, a loss of control because of this highway defect heightens the risk that the motorist may collide with a stationary object near the highway. In McSweeney v. Dept, of Tramp. & Development, supra, a collision with a utility pole resulting from loss of control caused by a “drop-off” was held to be the type of danger expected from such a dangerous road condition.
Accordingly, we conclude the DOTD’s negligent failure to maintain Highway 46 at the scene of this accident was the legal or proximate cause of plaintiffs injurious collision with the nearby tree. Having concluded that the DOTD is liable on the basis of negligence, we find no necessity to discuss strict liability under LSA-C.C. Art. 2317.
THE HOST DRIVER’S NEGLIGENCE
We likewise find no merit to defendant’s argument that the trial judge erred in failing to find the host driver Delcambre negligent.
Absent prior knowledge or an opportunity to avoid the defect, a motorist can presume that a highway shoulder is maintained in a reasonably safe condition and that serious harm will not result if he inadvertently drives onto the shoulder. LeBlanc v. State, supra; Rue v. State, Dept. of Highways, supra. Furthermore, Del-cambre’s testimony, corroborated by plaintiff, indicates the collision with the tree was unavoidable because of an inability to regain entry onto the highway due to the steepness of the incline of the ditch. Confronted with the threatening path of the oncoming car and the sudden emergency occasioned by the dangerous drop-off, Del-cambre’s action did not fall below the standard of care expected of a prudent driver under these extenuating circumstances.
ONCOMING DRIVER’S NEGLIGENCE
Turning now to the acts of the oncoming driver, we conclude, though not the sole cause of the accident as claimed by DOTD, his negligence was a concurrent cause of the accident.
Delcambre testified that the approaching vehicle did not veer into his lane of travel, although it looked as if it were. Nunez, the plaintiff guest passenger, testified the van had crossed the centerline, come into their lane “a little bit”, but returned back to its lane by the time the Delcambre vehicle left the road. Although this testimony supports a conclusion that the oncoming vehicle’s erratic path was a cause in fact of the accident by prompting Delcambre to drive closer to the shoulder than he otherwise would have, we cannot say the oncoming driver’s act was the sole legal cause of plaintiff’s injury when his action is considered in light of the highway condition. Simply put, if the highway were not in disrepair, the oncoming driver’s action and Delcambre’s action would not have resulted in plaintiff’s injuries.
Nonetheless, considering the evidence, we further conclude the trial judge erred in failing to find the oncoming driver’s negligence to be a concurrent cause of plaintiff’s injuries. The testimony of Del-cambre and the plaintiff passenger, though conflicting somewhat on whether the oncoming van actually crossed the center line, clearly establishes that the approaching vehicle was proceeding erratically and that the oncoming driver’s failure to keep his vehicle under control within his lane created a risk that approaching vehicles might leave the highway in an attempt to avoid the perceived danger of a head-on collision. Under these circumstances, we conclude the oncoming driver’s negligent failure to maintain control of his vehicle within his travel lane combined with the DOTD’s negligence and caused plaintiff’s injuries.
Having so concluded, however, we find it unnecessary to apportion fault between the DOTD and the oncoming motorist. Although LSA-C.C. Art. 1804 (formerly LSA-C.C. Art. 2103), provides that as *388 between themselves each solidary tort fea-sor is liable for his virile portion proportionate to his fault, it would be vain and useless to assess the degrees of fault between the DOTD and the oncoming motorist. Although Smith was named as a defendant by plaintiff and third partied by the DOTD for contribution, he was never served and made no appearance at trial. Furthermore, at the beginning of trial, the judge asked the attorney whether all of the other parties in this matter have been compromised or settled or dismissed out of the suit and received responses indicating that the instant case concerned only the plaintiff Nunez and the defendant State. Given this procedural posture, where the oncoming driver cannot be cast in judgment and where the innocent plaintiff Nunez would be entitled to full recovery from the DOTD even if it were adjudged liable in solido with the oncoming driver, we find no necessity or basis for amending the judgment.
Accordingly, the judgment is affirmed.
AFFIRMED.