471 So.2d 871 (1985)
Evelyn B. KENNEDY et al, Plaintiffs-Appellants,
v.
Oscar BEARDEN et al, Defendants-Appellees.
No. 17011-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*873 Charles E. Welsh, Bossier City, for plaintiffs-appellants.
Barham, Adkins & Tatum, Ruston, for defendants-appellees.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Judge.
Mr. M.O. Bearden and his wife, Mrs. Annie Bearden, were 88 and 85-years-old respectively when they sold the 36 acres of Union Parish pasture-land upon which their home was built to Oscar and Odessa Bearden. The sale took place on February 27, 1978. While the 36 acres comprised all of the immovable property owned by Mr. and Mrs. Bearden, the elderly couple reserved a right of habitation so that they could continue to occupy their home. Oscar Bearden, who was one of Mr. and Mrs. Bearden's nine children, lived within sight of his parent's home. Oscar paid $10,000.00, the amount recited as the consideration in the cash sale deed, by cashier's check dated March 3, 1978. The $10,000.00 was deposited into a checking account opened in the name of Mr. M.O. Bearden on March 14, 1978. Within a month-and-a-half, all of the sale proceeds were returned to the account of Oscar Bearden.
Shortly after the sale, Oscar Bearden's son and family moved in with M.O. and Annie Bearden. On February 12, 1979 the old family home burned, and Mr. and Mrs. Bearden, who escaped the fire without injury, moved in with Oscar and Odessa Bearden. At the request of M.O. Bearden, Oscar and his son built a new house that was completed in August 1979 upon the site of the old family home. Oscar Bearden, Jr. and his family as well as M.O. and Annie Bearden moved into the new house. However, Mr. and Mrs. Bearden only occupied the house a short while. In October 1979, M.O. Bearden entered a nursing home where he remained until his death in November 1980. Mrs. Annie Bearden died shortly thereafter in February 1981.
The plaintiffs, other children and grandchildren of M.O. and Annie Bearden, co-heirs with Oscar Bearden, brought suit on May 27, 1981 attacking the sale of the land to Oscar. The trial court rejected plaintiffs' claims, finding that a valid sale had occurred which was not subject to recision on the grounds of lack of capacity, fraud, coercion, or lesion. On appeal, plaintiffs assert five assignments of error:
1. Monroe Bearden was incapable of contracting.
2. The purported sale was a pure simulation.
3. The purported sale was a donation omnium bonorum.
4. The purported sale was a donation in disguise that divested the forced heirs of their legitime.
5. The purported sale was invalid because of lesion beyond moiety.
After reviewing the record in this case, we affirm the trial court's judgment rejecting plaintiffs' claims and finding a valid sale not subject to recision.

CAPACITY
Attacks on a noninterdicted decedent's contract are addressed by LSA-C.C. Art. 1926 (Rev.1984) which provides:
A contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding, or was made within 30 days of his death, or when application for interdiction was filed before his death.
This new article does not change the law, but consolidates the provisions of LSA-C.C. Art. 1788(5)-(11) (1870) in a manner consistent with LSA-C.C. Art. 403 (1870). In the present case, the contract was not made within 30 days of Mr. M.O. Bearden's death, interdiction of Mr. Bearden had not occurred, and an application for interdiction was never filed. The contract provisions themselves evidence no *874 lack of understanding and, as discussed later in this opinion, the contract was not gratuitous. Therefore, the contract at issue cannot be attacked after the death of Mr. M.O. Bearden on the ground of incapacity. We note that even if such an attack were proper, plaintiffs in this case failed to show incapacity. The law of this state presumes the capacity to contract. Standard Life and Acc. Ins. Co. v. Pylant, 424 So.2d 377 (La.App.2d Cir.1982), writ denied 427 So.2d 1212 (La.1983). Exceptions to this presumed capacity are few and must be shown quite convincingly and by the great weight of the evidence. First Nat. Bank of Shreveport v. Williams, 346 So.2d 257 (La.App.3d Cir.1977). Rather than finding Mr. M.O. Bearden was incapable of contracting, the trial court found the testimony indicated that Mr. Bearden, while undoubtedly suffering from the disabilities of advanced age, remained fully cognizant of his actions and their significance long after the transaction and up until his death. We find no error by the trial court in this regard, and reject plaintiffs' contention that Mr. M.O. Bearden lacked capacity to contract at the time of the transaction. We further note that while Mrs. Annie Bearden signed the instrument, the issue of her capacity is not raised on appeal and will not be considered.

SIMULATION, DONATION IN DISGUISE, AND DONATION OMNIUM BONORUM
In Moore v. Moore, 427 So.2d 1320 (La. App.2d Cir.1983), forced heirs of deceased parents sued to nullify three conveyances from the parents to the forced heirs' deceased brother as simulations or donations in disguise impinging upon their legitime. When discussing the law applicable to simulations under those circumstances, this court stated:
A simulation is a transfer of property which is not what it seems. Simulations are of two types: pure simulations and disguised transfers. In a pure simulation, sometimes called a non transfer, the parties only pretend to transfer the property from one to the other, but in fact both transferor and transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed; that is, that no transfer had in fact taken place. The other type of simulation is a disguised transfer which seems on its face to be a valid sale, but in fact is actually intended by the parties to be a gift rather than a sale. When this type of simulation is attacked successfully under Art. 2444, the true intent of the parties is likewise effectuated by the law. A valid transfer has taken place but its form is a donation rather than a sale and the Code articles on donations apply to the transfer.
See also LSA-C.C. Arts. 2025-2027 (Rev. 1984).
In the instant case, plaintiffs' second and fourth assignments of error allege the pure simulation and the disguised transfer respectively. We will first consider the claim of a pure simulation.
Two legal presumptions, one codal and one jurisprudential, apply in situations where a party seeks to prove a pure simulation. The codal presumption is found in LSA-C.C. Art. 2480 which provides:
In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct or retained possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.
The jurisprudential presumption of simulation applies where the evidence establishes the existence of facts and circumstances which create a highly reasonable doubt as to the reality of a putative sale. Wilson v. Progressive State Bank and Trust Co., 446 So.2d 867 (La.App.2d Cir. 1984).
When either presumption is applicable, the burden of proof shifts to the *875 party to the sale who may rebut the presumption by establishing a good faith transaction resulting in a true alienation of ownership for consideration. Wilson, supra. True alienation of ownership can be established in turn by simply showing that consideration was given for the sale. If any consideration, however small, is given, the sale may not be set aside as a pure simulation. Russell v. Culpepper, 337 So.2d 226 (La.App.3d Cir.1976), affirmed, 344 So.2d 1372 (La.1977).
The record in this case supports a finding of the giving of consideration. The deed recites consideration for the sale to be $10,000.00. The evidence shows that Oscar Bearden borrowed the money to pay for the land from Farmerville Bank, securing the loan by mortgaging the property. The evidence further shows that a bank money order from Farmerville Bank for the purchase price was issued, and that the $10,000.00 was actually deposited in a checking account opened in the name of Mr. M.O. Bearden.
Plaintiffs argue that since the money in this account ended up in Oscar Bearden's account within a month-and-a-half, Mr. M.O. Bearden never actually had control over the sale proceeds. While this evidence, taken alone, would seem suspicious, the trial judge accepted defendant's explanation that the checking account was initially set up because Mr. M.O. Bearden planned to give $1,000.00 of the sale proceeds to each of his other children by issuing a $1,000.00 check to each. This explanation is supported by the fact that checks for $1,000.00 to some of the children were actually written and mailed although refused by the intended recipients. When the checks were not cashed, Mr. and Mrs. Bearden, fearing the loss of government benefits due to the presence of sale proceeds in the checking account, arranged for the proceeds to be placed in Oscar Bearden's account with the understanding that the proceeds would be used to care for them. The trial court found that these funds, as well as others, were spent on the construction of the new dwelling on the old home site. An appellate court must give great weight to the conclusions of the trier of fact, and should not disturb reasonable evaluations of credibility and reasonable inferences of fact. Thigpen v. Boswell, 465 So.2d 865 (La.App.2d Cir.1985). Applying these principles in this case, we cannot conclude that the trial court was clearly wrong in accepting defendant's explanation. Therefore, the finding of the giving of consideration is affirmed, and plaintiffs' allegation of a pure simulation is rejected.
In considering the second type of alleged simulation, a disguised donation, the provision of LSA-C.C. Art. 2444 are pertinent. That article provides:
The sales of immovable property made by parents to their children may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold at the time of the sale.
As discussed previously, the conclusion reached in this case is that the price of $10,000.00 was actually paid for the property. As will be discussed subsequently, a further conclusion is that the price paid did not amount to lesion beyond moiety. Since the sale price was not low enough to be considered less than one-half of the property's just value, a fortiori, the price was not below one-fourth of the real value. Therefore, plaintiffs cannot avail themselves of the provisions of Art. 2444 in attacking the transaction at issue as a disguised donation.
It is somewhat doubtful that the previously quoted provisions of LSA-C.C. Art. 2480 apply to the alleged disguised donation in this case. A strict interpretation of that article would place this transaction outside the article since a right of habitation was reserved rather than usufruct. Of course, in a given situation a right of habitation is arguably tantamount to usufruct for the purposes of Art. 2480 as in the situation where a dwelling occupies most or all of a residential lot involved in a purported sale. See Radovich v. Jenkins, 123 La. 355, 48 So. 988 (La.1909). In contrast, the old home in the present case, *876 worth little in comparison with the land itself, occupied only a small portion of the property involved. Furthermore, because retention of possession of property by the seller gives rise to a presumption of simulation by raising doubt as to whether any transfer of ownership really occurred, "simulation" as used in Art. 2480 would appear to refer to the pure simulation rather than the disguised transfer. In any event, we agree with the trial court's holding that even if a presumption of simulation applied, the evidence is sufficient to rebut a codal or jurisprudential presumption. Given the right of habitation reserved instead of usufruct, the size and value of the property in comparison with that of the dwelling, the payment of substantial consideration, the explanation of events subsequent to the sale as accepted by the trial court, and the natural desire of the elderly couple to remain in their home in which they had lived for many years, any presumption of simulation was overcome. As a result, plaintiffs claim that the transaction at issue was a disguised donation is rejected.
Finally, the plaintiffs' allegation of a donation omnium bonorum must be rejected, since, as discussed above, the transfer of property in this case was not a donation at all, but a sale.

LESION BEYOND MOIETY
A vendor has the right to demand the recision of a sale of immovable property if the property was sold for less than one-half of its just value, even if in the contract the vendor expressly abandoned the right to claim such recision. LSA-C.C. Art. 2589. However, the burden of proof required to rescind a sale for lesion beyond moiety is a very heavy one. Evergreen Plantation, Inc. v. Zunamon, 319 So.2d 543 (La.App.2d Cir.1975). The vendor has the burden of showing the lesion by particularly strong and convincing evidence of such a nature as to exclude speculation and conjecture. Dosher v. Louisiana Church of God, 225 La. 21, 71 So.2d 868 (1954).
In the present case, the plaintiffs would have to convincingly prove that the property was worth more than $20,000.00 in February of 1978. Plaintiffs' appraiser testified that in his estimation, the 36 acres were worth a total of $41,000.00. While this total included mineral rights, most of the mineral and royalty rights were outstanding, and not included in the contested conveyance. On the other hand, defendants' appraiser estimated the value at $17,000.00.
After reviewing the testimony of the two expert appraisers, as well as property conveyances alleged by the appraisers to be comparable to the sale at issue for the purpose of establishing just value, we conclude plaintiffs failed to convincingly establish the existence of lesion beyond moiety. The sales presented by plaintiffs' appraiser occurred mostly 1½ to 2 years after the sale at issue. None occurred prior to this sale. Defendants' appraiser presented convincing evidence that property values inflated substantially in that vicinity after the sale at issue as a result of oil and gas production. Furthermore, defendants' appraiser worked in that geographical area, and was more familiar with it than plaintiffs' appraiser from Monroe. Finally, we note that plaintiffs' appraiser did not consider the right of habitation when arriving at his estimated property value. That incumberance would almost certainly have lowered the market value of the property. Thus, plaintiffs failed to carry the heavy burden of showing lesion beyond moiety by particularly strong and convincing evidence.
While the trial court found the evidence favored the estimate of defendants' appraiser rather than the estimate of plaintiffs' appraiser, the court nevertheless, for purposes of determining the issue of lesion, used the higher estimated value, and found no lesion based upon evidence of additional consideration in the form of past and future services of Oscar and Odessa Bearden. The court valued these services at $37,000.00. Evidence of this additional consideration came in the form of oral testimony of the defendants which was met with a timely objection by counsel for plaintiffs. Rather than placing a value upon the services, *877 the better course of action would have been to give little or no consideration to the evidence of additional consideration since the issue of lesion could be resolved without resort to such evidence, and since such self-serving evidence, even if admissible, was of little probative value. Furthermore, such parol evidence may well be inadmissible. See Girod v. Vines, 23 La. Ann. 588 (1871); LSA-C.C. Art. 2276 (1870); LSA-C.C. Art. 1848 (Rev.1984). See also 3 La.L.Rev. 427 (1941), 35 La.L. Rev. 779 (1975), and LSA-C.C. Art. 1970 (Rev.1984) with regard to the application of LSA-C.C. Art. 1900 (1870).

CONCLUSION
The conveyance of the immovable property at issue is found to be a valid sale, not subject to recision on the grounds of incapacity of the decedent/vendor, pure simulation, donation in disguise, donation omnium bonorum, or lesion beyond moiety. Since the issues in this case address the propriety of the transfer of the property only, we express no opinion with regard to any claims to the proceeds of the sale. Costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.