JASPER E. JONES, Judge.
Plaintiffs-appellants brought this action challenging the deceased, Ben Martin, Jr.’s change of beneficiary on his life insurance policy based upon the deceased’s mental incompetency at the time of the change. Appellants now appeal the trial court judgment rejecting appellants’ claim. We affirm.
FACTS
Appellants on appeal in this matter is the deceased’s wife, Margaret Sikes Martin, his two sons, Benny Wayne Martin and Richard Earl Martin. Defendants below were Metropolitan Insurance Company, which issued the life insurance policy in question, and William Johnson, the named beneficiary on the deceased’s life insurance policy. A concurcus proceeding was invoked by Metropolitan Life against the original beneficiary, Margaret Sikes Martin, and the last named beneficiary, William Johnson, to determine which individual was entitled to the policy proceeds. Upon deposit of the insurance proceeds into the registry of the court, Metropolitan was dismissed from the proceeding. William Johnson is appellee on appeal.
Margaret Sikes Martin and Ben Martin, Jr., were married for thirty-four years. During their marriage Mr. Martin was employed by International Paper Company which provided to its employees a group life insurance policy issued by Metropolitan. In January of 1980 Mr. Martin designated his wife Margaret Sikes Martin as beneficiary on the Metropolitan life insurance policy in the amount of $111,000.
In December of 1982, Mr. Martin suffered a stroke which left him paralyzed on his right side, although not immobilized. Six months after his stroke in June of 1983, Mrs. Martin left Mr. Martin because of marital discord and Mr. Martin filed suit for legal separation.
The minute entry of rules disposed of by stipulation in the separation proceedings included language stating “plaintiff is to retain defendant as beneficiary on insurance policies.” The minute entry was made on August 15,1983. Thereafter, Mr. Martin made four changes in the named beneficiaries on the Metropolitan policy, the first occurring on August 24, 1983, in which he substituted his son, Benny Martin, as beneficiary. On February 14, 1984, Mr. Martin named Bonnie Johnson, his sister, and William Johnson, his brother-in-law, as beneficiaries. A third change occurred on September 10, 1984, in which Benny Martin was again named as beneficiary. The fourth and final change occurred on February 11, 1985 in which Mr. Martin again named his brother-in-law, William Johnson, as beneficiary. The policy remained in effect with William Johnson *1229 the named beneficiary at the time of Mr. Martin’s death on September 28, 1985.
ISSUES
Appellant urges two issues for review on appeal:
(1) Did Mr. Martin have the mental capacity to change the beneficiary on his life insurance policy?
(2) Did Mr. Martin and his wife contrac-turally agree to retain Mrs. Martin as beneficiary?
CAPACITY
Appellants allege they are entitled to have Mrs. Martin reinstated as beneficiary because Mr. Martin lacked the mental capacity to change the beneficiary on his life insurance policy as a result of his December 1982 stroke.
A contract made by a noninterdicted decedent may be challenged under LSA-C.C. art. 1926 which provides:
A contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding or was made within 30 days of his death, or when application for interdiction was filed before his death.
In this case, the contract was not made within 30 days of Mr. Martin’s death. Mr. Martin was not interdicted at the time of his death nor was a petition for interdiction filed. The changing of a beneficiary under a life insurance policy is not a gratuity. Standard Life Ins. Co. v. Taylor, 428 So.2d 1294 (La.App.3d Cir.1983); Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (La.1930). Appellants urge the contract evidences a lack of understanding by reason of there being four changes of beneficiaries on the policy within a twenty month span and because the decedent’s signature on the change of beneficiary forms were written with an unsteady hand.
The capacity to contract is presumed. Standard Life & Acc. Ins. Co. v. Pylant, 424 So.2d 377 (La.App.2d Cir.1982), writ den., 427 So.2d 1212 (La.1983). Exceptions to the presumption of capacity to contract must be shown quite convincingly and by the great weight of the evidence. First Nat. Bank of Shreveport v. Williams, 346 So.2d 257 (La.App.3d Cir. 1977); Kennedy v. Bearden, 471 So.2d 871 (La.App.2d Cir.1985).
At trial plaintiffs attempted to establish Mr. Martin’s mental incapacity at the time of changing beneficiaries through the testimony of the plaintiffs and the testimony of the deceased's doctor, Dr. A.C. Wadlington, Mrs. Betty Slaughter, a longtime acquaintance of Mr. Martin, and Mrs. Hazel Wright, Mr. Martin’s neighbor.
Dr. Wadlington testified Mr. Martin suffered from “organic brain syndrome” from his stroke resulting in Mr. Martin experiencing mental disorientation and slurring of the speech. Dr. Wadlington admitted he made no notes in his records of Mr. Martin being incompetent and admitted that if he had observed that Mr. Martin was mentally incompetent during his examinations that he would have noted this observation in his records. Dr. Wadlington did not testify that Mr. Martin was incompetent at the time he made the beneficiary change in the life insurance policy.
Mrs. Martin testified the deceased had mood swings with respect to religion, alternatively displaying a respectful attitude and then becoming enraged with the subject. She also related her husband displayed uncharacteristic behavior in his sex life and grooming habits in that he was immodest in dress and unconcerned with his hygiene. Mrs. Martin left their home after an altercation with her husband in which she allegedly feared for her personal safety.
Benny Martin and Richard Earl Martin both testified to having a generally strained relationship with their father. Both sons testified as to their belief their father was not mentally capable of understanding the consequences of changing beneficiaries on his life insurance policy. However, Richard Martin did relate his father continually used the insurance policy *1230 as a threat. Benny Martin testified his father continued to drive his truck and handle his own bank account up until a week before his death.
Mrs. Betty Slaughter related her observation that Mr. Martin’s attitude toward money and his children had changed drastically after his stroke as Mr. Martin became concerned his children only wanted him for his money.
Mrs. Hazel Wright, Mr. Martin’s neighbor before and after his stroke, related her opinion “[Mr. Martin] was not mentally right” after his stroke and corroborated Mrs. Martin’s testimony regarding Mr. Martin’s lack of modesty and poor grooming habits. She also related an incident in which Mr. Martin threatened Mrs. Martin with a large file stating “I can kill anybody I want to.” Mrs. Martin also related further incidences of what she considered to be uncharacteristic, although not violent behavior of Mr. Martin.
The defendant called David Post, the deceased’s attorney, to testify at trial. Mr. Post had represented Mr. Martin in the separation proceedings with Mrs. Martin and related his observation that he never doubted Mr. Martin could handle his own affairs, although Mr. Post did note the deceased had some physical disabilities. Mr. Post further related his discussions with Mr. Martin regarding the change of beneficiaries on Mr. Martin’s policy:
Q. During your representation of Mr. Martin, did you have the opportunity to discuss his life insurance policies with him?
A. Yes, I did.
Q. And did that discussion include the —a discussion as to change of beneficiaries?
A. Yes, sir, it did.
Q. And would you relate to the Court what your discussions relative to change of beneficiaries were with Mr. Martin?
A. He told me that he was gonna change the beneficiaries on his insurance policies and he was gonna take his closest relatives, his wife and his children, off of — from being the beneficiaries and I talked with him at length about it and told him that I thought he was — he was mad at his son and mad at his wife and he felt his son had taken his wife’s part in the divorce between them and I told him that if he left it to some third person, he may be sorry and he was very adamant about what he wanted to do.
Q. Did he seem to understand what he was doing?
A. Yes, sir.
Q. Did he seem to be very well cognizant as to the fact that the change of beneficiary with the insurance company would result in someone receiving that money other than his family?
A. Yes, sir.
Q. Other than his wife and children.
A. Yes, sir.
In his reasons for judgment the trial judge found the testimony of Mr. Post to be most compelling as Mr. Post stated not only was Mr. Martin mentally competent, he was also a “relatively cagey and wilely person” evidenced by his conscious act of driving to Bastrop for the sole purpose of changing beneficiaries. Mr. Harold As-well, another of Mr. Martin’s attorneys during the separation litigation, Mr. Bruce French, Mr. Martin's druggist, and the other defense witnesses all testified Mr. Martin was mentally competent after his stroke.
An appellate court must give great weight to the conclusions of the trier of fact and should not disturb reasonable evaluations of credibility and reasonable inferences of fact. Kennedy v. Bearden, 471 So.2d 871 (La.App.2d Cir.1985). We agree with the trial court the record reveals the plaintiffs failed to show Mr. Martin was mentally incompetent at the time he changed beneficiaries on his life insurance policy. The trial court did not err in giving greater weight to the defense witnesses’ testimony. We conclude Mr. Martin was mentally competent at all times when sub *1231 stituting beneficiaries on his life insurance policy.
CONTRACT
In the alternative appellant argues she and her husband entered into a contrac-tural agreement prohibiting Mr. Martin from changing beneficiaries on the policy. In support of her position Mrs. Martin points to an August 15, 1983 minute entry made during the course of the separation proceedings which stated “Plaintiff [Mr. Martin] is to retain defendant as beneficiary on insurance policies.” The written judgment did not contain this stipulation.
Appellant concedes in brief that the minute entry cannot prevail over the written judgment; rather, appellant argues the minute entry is proof of a contract entered into by Mr. and Mrs. Martin on August 15, 1983.
The record reveals no factual evidence to support the existence of a contract between the parties. Mrs. Martin testified she did not discuss the life insurance policy with her husband on August 15, 1983 nor had she discussed the life insurance policy with her own attorney on the same date.
Mr. Harold Aswell, the attorney for the deceased at the time of the hearing on the rule, testified the life insurance policy on Mr. Martin’s life was not made part of the discussions between counsel for the litigants at the time of the August 15 hearing. Mr. Aswell further testified the judgment signed by the court on September 21, 1983 was prepared by Mrs. Martin’s attorney. The only provisions in the judgment on the rule relating to insurance was that Mr. Martin was required to provide Mrs. Martin with health insurance and insurance on a 1979 Pontiac automobile. The trial judge made specific reference to the judgment prepared by Mrs. Martin’s attorney in which no restriction on the change of beneficiaries on Mr. Martin’s life insurance policy was indicated.
We conclude as did the trial court the appellant failed to establish the existence of a contract prohibiting the change of beneficiary of the deceased’s life insurance policy. Since the issue is not before us, we express no opinion as to the validity of such a contract had its existence been proven.
CONCLUSION
For the reasons expressed above, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.