LINDSAY, Judge.
The plaintiff, Joel H. Anderson, as trustee for the Joel Gregory Anderson and Lisa McCall Anderson Trusts, appeals a trial court judgment finding that a personal donation of the Anderson family home to the children’s trusts by Anderson and his wife, was an invalid donation, with title remaining in the Andersons, and therefore maintaining mortgages on the house in favor of three of the defendants, Aetna Life and Casualty, Pioneer Bank & Trust Company and Liberty Bank & Trust Company. For the following reasons, we affirm.
*1071 FACTS
On November 20, 1972, Agnes Waller McCall established separate irrevocable trusts for her grandchildren, Joel Gregory Anderson and Lisa McCall Anderson. Joel H. Anderson, father of the children and son-in-law of Mrs. McCall, was named trustee.
On April 22, 1974, Joel H. Anderson and his wife, Youree Jean McCall Anderson, purported to make an irrevocable donation of their home, including its contents, to the trusts. An undivided one-half interest was purportedly donated to each trust. The donation was subject to the original mortgage on the property in favor of DeSoto Federal Savings and Loan Association. The house and contents were valued at over $300,000.00.
After the donation, the Andersons never moved out of the house and continued to treat the property as belonging to them personally. In the years following the purported donation of the house to the trusts, Joel Anderson and Youree Jean Anderson became involved in several business ventures. Mr. Anderson was involved in the formation and/or operation of Red River Valley Bank, Eagle Bend Development Company, and McCall Land Company. Mrs. Anderson was also involved in the McCall Land Company, as well as an interi- or design firm, Winburn Curbs and Associates.
The Anderson’s various business and personal ventures apparently required large sums of money which they sought to obtain through loans from the defendant lending institutions. The Andersons’ most ready source of collateral was their house. In order to use the house as collateral for. the loan, on August 24, 1978, a cash sale deed was executed by Mr. Anderson, in his capacity as trustee for the childrens’ trusts, conveying the house back to Mr. and Mrs. Anderson for a recited consideration of $125,000.00. Thereafter, and at various times, the Andersons executed a series of promissory notes which were secured by mortgages covering the property. The plaintiff later filed suit to have certain of these notes and mortgages declared null in relation to the trusts. The notes and mortgages discussed below form the basis of the plaintiff’s suit for declaratory judgment.
On August 24, 1978, Mrs. Anderson and Mr. Anderson, both personally and as trustee, executed a promissory note for $175,-000.00 to Blaylock Investment Corporation, secured by a mortgage on the house. This note was transferred to Aetna that same day. The proceeds of this loan were used to pay off the first mortgage on the house to DeSoto Federal Savings & Loan Association and two personal notes owed by the Andersons to Foremost Mortgage Corporation. The latter two notes were not secured by a mortgage on the property.
On March 11, 1981, Mrs. Anderson and Mr. Anderson, both personally and as trustee, executed a note in favor of Foremost Mortgage Corporation for more than $100,-000.00. This note was secured by a mortgage on the property. The note and mortgage were later transferred to Pioneer.
On November 12, 1981, Mrs. Anderson and Mr. Anderson, in his personal capacity and as trustee, executed a note in favor of any future holder for $250,000.00, secured by a collateral mortgage affecting the property. The note and mortgage were filed into the mortgage records by Pioneer on November 17, 1981.
On September 13, 1983, the Andersons, in their individual capacities, executed a series of three notes to Pioneer, secured by mortgages on the property. The first note was for $191,873.75; the second note was for $25,602.77; the third note was for $27,-900.09.
On August 8, 1984, the Andersons, in their individual capacities, executed a collateral note and mortgage covering the property. The collateral note and mortgage were pledged to secure the payment of a hand note to Liberty Bank for $108,-043.84.
On September 13, 1982, the Andersons, in their individual capacities, executed a note in favor of Republic Bank in the amount of $10,000.00, secured by a collateral chattel mortgage covering the house *1072 hold goods and furnishings and other movable property in the house.
It appears the Andersons encountered financial difficulty and they became concerned that the defendant mortgage holders might institute foreclosure proceedings against the house. On December 23, 1985, Joel H. Anderson, as trustee, filed suit against Aetna, Pioneer, Liberty and Republic seeking to have the notes and mortgages declared null and void.
Anderson, as trustee, claimed the cash sale deed whereby he attempted to convey the property from the trust to himself and his wife was invalid because the consideration was never paid and, even it if had been paid, the price paid was lesionary. He also claimed that the purported sale of the house by the trust to the trustee, in his personal capacity, violated the Louisiana Trust Code. Therefore, he claimed the house still formed part of the corpus of the trusts. He further argued that individuals cannot obligate trust property for personal obligations, that these obligations were personal obligations and not incurred for the benefit of the trusts and therefore the notes and mortgages were nullities.
The case was tried on June 19, 1987. On November 23,1987, the trial court rendered a judgment in favor of the defendants, Aetna, Pioneer and Liberty, rejecting the demands of Anderson, as trustee.[1]
In its reasons for judgment, the court found that the Andersons’ donation of the house to the trust was invalid because the Andersons never had the requisite donative intent to irrevocably divest themselves of the house. The court noted numerous factors indicating a lack of donative intent, including the fact that although the Andersons continued to live in the house, no rent was paid to the trusts and the Andersons personally claimed the homestead exemption on the house until 1984. The court also noted the Andersons personally paid ad valorem taxes on the property, as well as utilities, insurance and repairs. They also contracted for a substantial ($120,000.00) renovation and addition to the house. The court found the Andersons personally made all installment payments on the notes and mortgages affecting the property, listed themselves as the insured on homeowners’ insurance policies, claimed interest payments on the loans as deductions on their personal income tax returns and listed the property as a personal asset on financial statements.
The plaintiff appealed, claiming the trial court erred in finding the donation of the house to the trusts was invalid. The plaintiff further argued that each lending institution knew the house was trust property but inexcusably used the property to secure personal obligations of the Andersons. Based upon these contentions, the plaintiff claims the trial court erred in refusing to declare the mortgages on the house to be null.
DONATIVE INTENT
The trial court found that, even though the Andersons executed an authentic act of donation on April 22, 1974, purporting to place their house and its contents into the trusts, the Andersons never had the dona-tive intent to presently and irrevocably divest themselves of ownership of the house. As mentioned above, the trial court cited numerous actions on the part of the Andersons demonstrating that they never viewed the house as belonging to the trusts, but instead, continually dealt with the house as their personal property.
After a careful review of the record, we cannot say that the trial court was clearly wrong in its judgment.
Donations inter vivos are governed by LSA-C.C. Art. 1468 which provides:
A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts.
*1073 In order to have a valid donation, it must appear that the donor had the intent to divest himself of his property. This intent is an invisible thing existing only in the donor’s mind, however, where an authentic act is required, the intent can be inferred from the execution of the authentic act. Succession of Brewster, 259 So.2d 388 (La.App. 2d Cir.1972). Donations of immovable property must be made by authentic act. LSA-C.C. Art. 1536. The general rule is that an authentic act is full proof of the agreement contained in it against the contracting parties, their heirs and assigns, and parol and other extrinsic evidence will not be admissible to defeat the act unless a party claims the act was executed through fraud or error. First National Bank of Ruston v. Mercer, 448 So.2d 1369 (La.App. 2d Cir.1984). However, because the Louisiana parol evidence rule is evidentiary in nature and not substantive, if not invoked at trial via proper objection, the right to later object to such evidence is waived and may not later be invoked to exclude such evidence. First National Bank of Ruston v. Mercer, supra.
In the present case, much parol and extrinsic evidence was presented at trial, with objection, to show that the Andersons lacked donative intent at the time of execution of the authentic act of donation purporting to place the family home into the corpus of the trusts. This evidence was properly before the court and was properly considered by the court in arriving at its decision that the Andersons never intended to donate the house to the trusts.
The trial court relied upon Succession of Simpson, 311 So.2d 67 (La.App. 2d Cir.1975), writ denied 313 So.2d 839 (La.1975) in holding that the Andersons’ lack of present donative intent at the time they exceeded the act of donation rendered null the purported donation inter vivos.
In Simpson, the decedent, Mrs. Simpson, executed in authentic form, an act of donation giving her house to some of her children. However, Mrs. Simpson did not cease to live in the house and made no move evidencing an intent to presently divest herself of the house. In Simpson, this court found that, even though Mrs. Simpson had an intent to donate, she did not intend to divest herself of her home until after her death. Therefore, because the donation was not to take effect until her death, it was not an inter vivos donation. Further, this court found there was no effective donation mortis causa because under the requirements of LSA-C.C. Art. 1570, such donations must be executed in the form of a last will and testament. Therefore, we found there was no valid donation.
The facts in the present case are similar to those found in Simpson. Here, even though the Andersons executed an authentic act of donation purporting to transfer the house to the trusts, they did not cease to live in the house and did not cease to enjoy other benefits flowing from the use and ownership of the home. The factors enumerated by the trial court illustrate that the Andersons continued to enjoy the benefits of home ownership after the date of the alleged donation.[2]
The Andersons lack of present donative intent was also demonstrated by the testimony of Mr. Anderson when questioned concerning their motives in purportedly placing the house in the trusts. Mr. Anderson responded that it was a simple way to convey to the children “something we could give them in the future”. (R. p. 328)
Although in the present case it is not clear that the Andersons’ intent was that this in fact be a donation mortis causa, it is clear that at the time the donation was made, they had no intent to presently divest themselves of the ownership of the *1074 house. Therefore, we find the trial court correctly relied upon Simpson to find that the donation in the present case was invalid for lack of donative intent.
This court’s decision in Simpson was criticized in scholarly commentary arguing that the Simpson donation was a valid inter vivos donation subject to the suspen-sive condition of the donor’s death. Lazarus, Successions & Donations — Work of Appellate Courts 1974-1975, 36 L.L.R. 362 (1975). The plaintiff cites this authority in urging this court to overrule Simpson. We decline to do so.
In the law review article cited above, it is urged that even though Mrs. Simpson retained possession of the thing to be donated, she had “irrevocably divested herself of the thing given in that she was thereby precluded from disposing of the same property in favor of others.” However, this argument goes directly against the very definition of a donation inter vivos which requires present divestment of ownership and does not provide for continued use and enjoyment.
We also note that the terms of the instrument creating the trusts provided that neither the parents of the beneficiaries nor the settlor of the trusts could enjoy a usu-fruct over any property donated to the trusts. Although the Andersons, in their purported act of donation, did not formally reserve a usufruct over the house, they clearly continued the use and enjoyment of the property to the same extent as if a usufruct had been reserved and as though no donation had been made.
Further, we find that the trial court was called upon to make a factual determination regarding the presence or absence of donative intent in this case. Factual conclusions and assessments of credibility by the trier of fact are entitled to great weight. Ouachita Parish Police Jury v. Wright, 446 So.2d 835 (La.App. 2d Cir.1984). The trial court is considered to be in a better position to evaluate the credibility of witnesses and the weight of evidence than is the appellate court that neither sees nor hears the witnesses. For that reason, a reviewing court should not overturn such findings unless shown to be clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Childs v. Zurich American Insurance Company, 476 So.2d 403 (La.App. 2d Cir.1985), writ denied 479 So.2d 920 (La.1985); Elliot v. Eaves, 476 So.2d 388 (La. App. 2d Cir.1985), writ denied 478 So.2d 908 (La.1985); Kennedy v. Bearden, 471 So.2d 871 (La.App. 2d Cir.1985); Perkins v. Certa, 469 So.2d 359 (La.App. 2d Cir.1985). We do not find that the trial court in this case was clearly wrong in its judgment.
CONCLUSION
For the above stated reasons, we affirm the judgment of the trial court in favor of the defendants, Aetna Life & Casualty, Pioneer Bank & Trust, and Liberty Bank & Trust Company, rejecting the claims of the plaintiff, Joel H. Anderson as trustee for the Joel Gregory Anderson and Lisa McCall Anderson Trusts. Costs in this court and in the court below are assessed to the plaintiff.
AFFIRMED.

. The FDIC was substituted as a defendant in place of Republic Bank. Republic Bank held a security interest only in movable property in the house. Therefore, pursuant to a joint motion by all counsel, the trial court ordered that the plaintiffs cause of action against Republic Bank be severed and a separate trial held on those claims.

. We note that the plaintiff objects to the finding by the trial court that the Andersons listed themselves personally as owners of the house on the homestead exemption. The record shows the owners of the house were listed as the trusts in the years between the purported donation and the invalid cash sale deed. However, we do note that the benefits of the homestead exemption during those years inured to the Andersons because they were paying the taxes which were reduced by the homestead exemption.