JiGASKINS, Judge.
This case involves the validity of two intra family real estate transactions concerning the same tract of immovable property. In the first transaction, the plaintiff, James Roger Peacock (Roger), sold, with right of redemption, to his half brother, Jon Franklin Peacock (Jon), Roger’s interest in a 40-acre tract of land that Roger and Jon owned in indivi-sión. In the second transaction, Jon allegedly sold the entire tract of land to his wife, Sharon, for one dollar and “other valuable consideration.” The plaintiff filed suit to exercise his right of redemption, naming Jon and Sharon as defendants. The trial court found that the sale between Jon and Sharon was an absolute simulation and found that Roger had the right to redeem his interest in the property conveyed to Jon. The defendants appeal. We amend and, as amended, affirm the trial court judgment.
FACTS
In 1990, Roger Peacock needed money for a business venture. He proposed to convey to Jon his one-half interest in forty acres of immovable property they owned in indivisión in Ouachita Parish. Roger proposed to sell his interest to Jon for $8,000, with the right to redeem his interest in the property upon return of the $8,000, together with 5% interest per year. Jon sent Roger a check for $8,000, dated January 13,1990. Roger drafted a “quitclaim deed” dated January 5, 1990, selling his interest in the 40 acres to Jon for $8,000. In the deed, Roger retained a right to redeem his interest in the property by paying Jon $8,000, plus 5% interest within five years from the date of the document, January 5, 1990, if Jon still owned the property at the time Roger sought to redeem his interest. Regarding the right of redemption, the deed provided as follows:
James Roger Peacock reserves the right to repurchase his equal ownership in the above described property from Jon Franklin Peacock for the amount of $8,000 (Eight thousand dollars) plus 5% (Five percent) interest per anum [sic] within five years from the date of this document if he still owns the property at the time.
|2The deed specifically reserved to Jon the right to sell or dispose of the property at Jon’s sole discretion at any time until Roger repurchased his ownership interest. The *1032 deed was drafted by Roger and was notarized, but it was not in authentic form. It does not appear that Jon ever signed the deed.
The deed was not recorded by Jon until April 20, 1994. In the interim, Jon attempted on several occasions to obtain a deed from Roger that did not contain any right of redemption. Jon maintained at trial that the original agreement between the two never contemplated any right of redemption, while Roger insisted that a right of redemption was an essential element of his agreement with Jon. The record contains an undated letter from Jon to Roger referring to two enclosed versions of a cash sale deed, neither of which contained a right of redemption. In the letter Jon stated to Roger, regarding the property, “if you want it back, let me know and it’s yours, we can work out the details then.” Jon testified this language was “tongue in cheek.”
Roger testified that he met with Jon over the Easter weekend in 1994. Roger told Jon at that time that he intended to send him a check for $8,000 and that he intended to exercise his right to redeem his interest in the property. On April 18, 1994, Roger sent a registered letter to Jon with a check for $8,000. The intent was to exercise the right of redemption. For whatever reason, Jon did not pick up the registered letter until April 28, 1994, although testimony indicated that the ordinary mailing time between the two addresses was much shorter. As previously noted, the original “quitclaim deed” was not recorded in Ouachita Parish until April 20, 1994. On April 25, 1994, Jon executed another “quitclaim deed” purporting to transfer all of his interest in the property to his wife, Sharon, for one dollar and other valuable consideration. Subsequently, Roger wrote Jon a letter dated April 30, 1994, indicating that Roger had received the return notice showing |8that Jon had received Roger’s letter of April 18. In the letter, Roger stated that he would pay the 5% interest when Jon executed a deed returning Roger’s interest in the property. On May 2, 1994, Jon sent a letter to Roger, returning the check and informing Roger that the property had been sold. Jon did not tell Roger that the “buyer” was Jon’s wife.
Roger filed suit against Jon and Sharon Peacock on May 27, 1994, seeking to enjoin the defendants from alienating the property, seeking recognition of Roger’s right of redemption, and seeking an order that the defendants convey to him his interest in the property upon payment of the agreed price.
Jon and Sharon Peacock answered and filed a reconventional demand, seeking a reformation of the original deed to delete the right of redemption. Roger’s answer to the reconventional demand asked that the quitclaim deed between Roger and Jon be rescinded for lesion beyond moiety. This claim was dropped when the parties agreed that the claim for lesion had prescribed.
The case was heard in the trial court on May 11,1995. The trial court concluded that the evidence was not sufficient to reform the first quitclaim deed and remove the right of redemption contained therein. The court then turned its attention to the purported sale from Jon to his wife, Sharon. The court concluded that Jon’s attempt to explain the “other valuable consideration” at trial simply could not be accepted. According to the defendants, the property was sold to Sharon so that she could terminate her current employment and manage the couple’s property. Sharon allegedly would give Jon her 125 shares of Federal Express stock as payment for the property. She claimed to be seeking a “quieter style of life,” and testified that she had a medical problem that would be helped by less stressful work. The trial court did not give credence to this testimony, but concluded that the purported transfer from Jon to Sharon was “a sham and a veiled ^attempt to avoid Roger’s attempts to redeem or regain his interest in the subject property.”
The trial court concluded by stating that Jon had no claim to Roger’s one-half interest in the property except for the quitclaim deed of January 5, 1990, and that Jon must act in good faith and be subject to whatever rights were retained by Roger in that document. The court concluded that upon payment of the $8,000, plus all accrued interest, Roger was entitled to redeem his one-half interest to the property.
*1033 On August 9, 1995, the trial court signed and filed a judgment finding that Roger was entitled to redeem his one-half interest in the property and ordering the defendants to transfer to the plaintiff his one-half interest in the property upon the plaintiffs payment of $8,000 plus 5% interest from January 5, 1990 until April 18, 1994. The trial court ordered that the costs be divided equally between the parties.
The defendants appealed the trial court judgment, arguing that the trial court erred in finding that Roger had a valid right of redemption and that the trial court erred in finding invalid the sale between Jon and Sharon Peacock.
RIGHT OF REDEMPTION
■ The defendants argue that the trial court erred in finding that the plaintiff had a valid right of redemption to the property. The defendants argue that the attempted redemption by the plaintiff was defective in form and substance because the plaintiff did not tender the full amount due under the contract. The defendants contend that because the plaintiff tendered only $8,000 and not also the five percent-interest per year, he should not be allowed to exercise his right of redemption. The defendants also argue that the plaintiff cannot be in good faith in attempting to exercise his right of redemption, where he did not deposit the funds into the registry of the court. This argument is without merit.
15Under the provisions of LSA-C.C. art. 2567, the parties to a contract of sale may agree that the seller shall have the right of redemption which is the right to take back the thing from the buyer. Clearly, the quitclaim deed drafted by Roger and filed by Jon contains a right of redemption. Even in the face of numerous attempts by Jon to get Roger to execute a new deed without the right, Roger maintained that this right was an essential element of the agreement to convey his one-half interest to Jon.
Further, we reject the defendants’ argument that the redemption was defective because Roger did not tender the full amount due under the contract; i.e., his $8,000 check did not include the interest. Tender of the redemption price is not a necessary prerequisite to initiation of suit on a contract embodying the right of redemption by the vendor. A verbal offer to redeem is sufficient. Delcambre v. Dubois, 263 So.2d 96 (La.App. 3d Cir.1972). In this case, the plaintiff sent the defendants a check for $8,000, the purchase price, and stated that he would pay the interest at the time Jon gave him a deed returning to the plaintiff his one-half interest in the property. Therefore, the plaintiff validly sought to exercise his right of redemption. Accordingly, we find that the trial court did not err in finding that the sale from Roger to Jon was made with the right of redemption and that Roger is now entitled to exercise that right.
VALIDITY OF SALE BETWEEN THE DEFENDANTS
Under the provisions of LSA-C.C. arts. 2025 and 2026, a contract is a simulation when, by mutual agreement, it does not express the true intent of the parties, and is an absolute simulation when the parties intend that the contract shall produce no effects between them.
A simulation is a transfer of property which is not what it seems. In a pure simulation, sometimes called a nontransfer, the parties only pretend to transfer the |6property from one to another, but in fact both transferor and transferee intend that the transferor retains ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed; that is, that no transfer had in fact taken place. Kennedy v. Bearden, 471 So.2d 871 (La.App. 2d Cir.1985).
Two legal presumptions, one codal and one jurisprudential, apply in situations where a party seeks to prove a simulation. Kennedy v. Bearden, supra. The codal presumption is expressed in La.C.C. art. 2480 and is applicable where the vendor retains corporeal possession. The jurisprudential presumption of simulation applies where the evidence establishes the existence of facts and circumstances which create a highly reasonable doubt as to the reality of the putative sale. Kennedy v. Bearden, supra. When *1034 either the codal or jurisprudential presumption exist, the burden of proof shifts to the other party to the sale who may rebut the presumption by establishing a good faith transaction, resulting in a true alienation of ownership for consideration. Kennedy v. Bearden, supra. A transaction will not be set aside as a simulation if any consideration supports the transaction, because the reality of the transference is thus established. Russell v. Culpepper, 344 So.2d 1372 (La.1977).
In this case, by referring to the alleged sale by Roger to Sharon as a sham, the trial court indicated its conclusion that the transaction was an absolute or pure simulation. As such, it had no effect between the parties, and was subject to attack by Roger as being made in derogation of his right of redemption. The record supports the trial court finding. First, there was no showing that possession of the property passed from Jon to Sharon. Further, the record shows that facts and circumstances create a highly reasonable doubt as to the reality of a sale between Jon and Sharon. Roger testified that on Easter weekend, 1994, he told Jon that he | ./intended to mail him a check for $8,000 to regain his interest in the property within the next few days. This was followed by a “flurry of activity” by Jon in recording the original deed from Roger, purportedly selling the property to Sharon and not accepting delivery of the registered letter and check from Roger until after the purported sale to Sharon. Further, the record shows that Jon had learned that Roger’s interest in the property was worth much more than the $8,000 Jon paid Roger. The timber on the property alone was worth as much as $70,000.
Also, the trial court found that the defendants failed to show that any consideration was given for the purported sale between Jon and Sharon. Jon and Sharon had the burden of proving that the sale was an actual transfer of ownership and not a simulation. Kennedy v. Bearden, supra. Regarding the “other valuable consideration” Sharon testified that she intended to convey shares of stock to Jon and to leave her job in order to manage the couple’s property. However, she had not taken either action at the time of the purported sale to her.
An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error; where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Gardner v. McDonald, 27,303 (La.App. 2d Cir. 8/25/95), 660 So.2d 107, writ denied 95-2349 (La. 12/15/95), 664 So.2d 453.
[gWe find no manifest error in the trial court’s decision that the sale of the 40-acre tract for one dollar and “other valuable consideration” was a sham and an absolute simulation, having no effect between the parties. Accordingly, that portion of the trial court judgment, finding that there was no sale from Jon to Sharon Peacock is affirmed.[1]
CONCLUSION
For the reasons set forth above, we affirm the trial court judgment finding invalid the sale of the property between Jon and Sharon Peacock. We also affirm the trial court judgment ordering the defendants to convey to the plaintiff his one-half interest in” the disputed property, upon payment by the plaintiff of $8,000 plus 5% interest from January 5, 1990, until April 18, 1994. We amend the trial court judgment to order that James Roger Peacock’s payment to Jon Franklin Peacock shall be made no later than thirty days after this judgment becomes final. *1035 Costs in this court are assessed to the appellants.
AMENDED, AND AS AMENDED, AFFIRMED.

. We note that the record does not indicate whether Jon and Sharon Peacock were married in 1990 at the time of the quitclaim deed from Roger to Jon. However, under the facts presented here, this factor would not affect the outcome of this case.